(Rev. 4/97)

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### Instructions for Filing a Complaint by a Prisoner
### Under the Civil Rights Act, 42 U.S.C. § 1983

To start an action you must file an original and one copy of your complaint for each defendant you name and one copy for the court. For example, if you name two defendants you must file the original and three copies of the complaint. You should also keep an additional copy of the complaint for your own records. **All copies of the complaint must be identical to the original.**

Your complaint must be legibly handwritten or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space to answer a question, you may use the reverse side of the form or an additional blank page.

Your complaint can be brought in this Court only if one of the named defendants is located within this district. Further, you must file a separate complaint for each claim that you have unless they are all related to the same incident or issue.

AMENDED COMPLAINT 04-201 JJF

In order for this complaint to be filed it must be accompanied by the filing fee of $150.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants. If you are unable to prepay the filing fee and service costs for this action, you may petition the court to proceed in forma pauperis, by submitting an Application to Proceed Without Prepayment of Fees.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS.

When these forms are completed, mail the original and the copies to the Clerk of the U. S. District Court for the District of Delaware at the following address:



FILED
DEC 21 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Clerk
U. S. District Court
J. Caleb Boggs Federal Building
Lock Box 18
844 N. King Street
Wilmington, Delaware 19801

(Rev. 4/97)

# FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
## UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

### UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

Kevin L. Dickens
(Enter above the full name of the plaintiff in this action)

Comm, Stan Taylor, Bureau Chief Paul Howard, Richard Seifert, Anthony Rendina, IBCC, et al, John Ryan, Mike Little, Joe Hudson, Ms. Havel, Cpl. Oney, Warden Tom Carroll, Dep. Warden Betty Burris, Dep. Warden McGuigan, Major Cunningham, Capt. Sagers, Capt. Belanger, Staff Lt. Williams, Staff Lt. Burton, Lt. Savage, IGC Lise Merson, Sgt. Evans, Sgt. Moran, c/o Harris, Sgt. Tyson, c/o Neal, QRT ① et al, Lt. Stanton, c/o Gardels, Lt. Harvey, Lt. Secord, Lt. Welcome, c/o Rainey, QRT ② et al, Jayme Jackson, Lt. Porter, Cpl. Wronka, Counselor Kromka, Kramer, Zanda, Brian Engram, Ron Drake, Major Holman

V.

First Correctional Medical, Dr. Arronburl, Nurse Brenda Holwerda, Nurse Courtney Doe, Nurse Cindy Doe, Medical Director

V.

Delaware Center for Justice, Shakeerah Halkal, Camille Pringle, Littleton Mitchell, Frank Scarpetti
(Enter above the full name of the defendant(s) in this action

## AMENDED COMPLAINT 04-201 JJF

I. Previous lawsuits

  A. Have you begun other lawsuits in state or federal courts dealing with the same facts involved in this action or otherwise relating to your imprisonment?
     YES [ ]   NO [X]

  B. If your answer to A is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).  N/A

     1. Parties to this previous lawsuit

     Plaintiffs _____ N/A _____

     Defendants _____ N/A _____

2. Court (if federal court, name the district; if state court, name the county)

   N/A

3. Docket number _____N/A_____

4. Name of judge to whom case was assigned _____N/A_____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)

   N/A

6. Approximate date of filing lawsuit _____N/A_____

7. Approximate date of disposition _____N/A_____

II. A. Is there a prisoner grievance procedure in this institution? Yes [ ] No [ ]

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure? Yes [X] No [ ]

C. If your answer is YES,

   1. What steps did you take? Filed grievances to Grievance Committee, Appeal Officer, prison administrators, Bureau Chief, and Commissioner, including Complaints to Attorney General, U.S. Dep't. of Justice, and civil rights organizations

   2. What was the result? All Complaints and grievances were ignored by Prison authorities and Medical personnel.

D. If your answer is NO, explain why not _____N/A_____

E. If there is no prison grievance procedure in the institution, did you complain to prison authorities? Yes [ ] No [ ]   N/A

F. If your answer is YES,

   1. What steps did you take? _____N/A_____

   2. What was the result? _____N/A_____

-2-

III. Parties

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of Plaintiff **Kevin L. Dickens**

Address **Delaware Correctional Center, 1181 Paddock Rd, Smyrna, DE 19977**

(In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, positions, and place of employment of any additional defendants.)

B. Defendant (1) Comm. Stan Taylor (2) Bureau Chief Paul Howard (3) Richard Seifert (4) Anthony Rendina (5) Jim Ryan is employed as **Administrative Officers** at **Dept. of Corrections, 245 McKee Rd, Dover, DE 19903**

C. Additional Defendants (6) IBCC, et al, (7) Mike Little, (8) Joe Hudson (9) Mr. Havel, (10) Cpl. Oney, (11) Warden Tom Carroll (12) Dep. Warden Betty Burris (13) Dep. Warden McGuigan (14) Major Cunningham (15) Capt. Sagers, (16) Capt. Belanger (17) Staff Lt. Williams (18) Staff Lt. Burton, (19) Lt. Savage, (20) IGC Lise Merson, (21) Sgt. Evans, (22) Sgt. Merson, (23) c/o Harris (24) Sgt. Tyson, (25) c/o Neal, (26) QRT(1) et al (27) Lt. Stan (28) c/o Gardels, (29) Lt. Harvey, (30) Lt. Secord, (31) Lt. Welcome (32) c/o Rainey, (33) QRT(2) et al (34) Jayme Jackson (35) Lt. Porter, (36) Cpl. Kranka (37) Counselor Kranka (38) Counselor Kraner (39) Counselor Zunda, (40) Brian Engram (41) Ron Drake, (42) Major Holman are employed as administrators, support service officers, correctional officers and security supervisors at DCC, 1181 Paddock Rd, Smyrna, DE 19977 (43) First Correctional Medical (44) Dr. Arronsburl (45) Brenda Holwerda (46) Courtney Doe (47) Cindy Doe are employed as medical personnel, doctors, and nurses at First Correctional Center, McKee Road, Dover, DE 19903 (48) Delaware Center for Justice, (49) Shakeera Maired (50) Camille Pringle, (51) Littleton Mitchell, and (52) Frank Scarpetti are employed as prisoner advocacy organization at Delaware Center for Justice, 100 W. 10th St., Suite 800, Wilm, DE 17801

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)

As a pretrial detainee on February 15, 2002, Appellant was denied opportunity to eat breakfast by Sgt. Teddy Tyson, who slammed door in Appellant's and seven other inmates's faces as they approached hallway. Despite repeated requests for Sgt. Tyson to open door by inmates, he refused to let inmates out to eat breakfast. When Staff Lt. Burton came to tier, he also refused to allow inmates to eat breakfast. Instead he told Sgt. Tyson to give Plaintiff a disciplinary report for banging on tier door and being disorderly for complaining about not being allowed to eat breakfast. Plaintiff then sent a letter to Deputy Warden Burris complaining of Sgt. Tyson's repeated denials of inmate right to eat and also physically assaulting inmates while handcuffed.

-3-

(I)

Deputy Warden Burris wrote memo to Plaintiff, stating that Security Superintendent Holman "would be investigating the matter and getting back to Plaintiff." In almost two years, Plaintiff has not heard from Security Superintendent Holden despite repeated requests.

On the very next week, on Feb. 22, 2002, Sgt. Tyson worked overtime on day shift (8-4) at the chow hall. In retaliation for incident the previous week and filing a complaint, Sgt. Tyson tried to handcuff Plaintiff after instigating an argument with him after Plaintiff told another inmate that "he was a clown." Plaintiff continued to walk to chow hall and when Sgt. Tyson grabbed him, Plaintiff pushed him away and walked into chow hall. Plaintiff was well aware of Sgt. Tyson's tendency to assault inmates while handcuffed.

For this incident, Plaintiff was sent to "the hole" in Bldg. C for fifteen days without a hearing. While in isolation, Plaintiff was not given exercise or shower for six consecutive days without change of clothing. Furthermore, water was cut off from cells and toilets were only flushed at officer's discretion. Plaintiff was also not given any soap, washcloth, towel, toothpaste or toothbrush for his hygiene. Meanwhile, area lieutenants subjected Plaintiff to repeated and harassing strip searches each day even though he never left his cell.

During his isolation, Plaintiff was in jury trial. Plaintiff, who was pro se defendant, was not allowed to prepare and assist in his defense because officers confiscated his legal material. Prison officials also refused to allow him

(II)

to dress in street clothes, forcing him to wear prison uniform at trial. Only after he complained to trial judge, did prison officials allow Plaintiff to take shower and brush his teeth.

After not being given legal documents on first day of trial, the Court ordered corrections officials to allow Plaintiff to have his legal documents. However, corrections officials refused to allow Plaintiff to prepare his defense during his trial by refusing to give him legal documents in his cell. As a direct result of officer's actions, Plaintiff was found guilty of charges in New Castle County Court of Common Pleas.

After release from isolation status on March 8, 2002, Plaintiff was transferred to SHU Pre-Trial for disciplinary reasons, again without a hearing. While in SHU Pre-Trial, corrections property officers refused to bring Plaintiff's property to him, forcing him to not be able to take showers or change clothes because SHU staff refused to give him towels or change of clothes. When Property Officer, Cpl. Morgan, finally brought property on March 15, 2002, she did not have legal documents. When she tried to force Plaintiff to sign property release form, Plaintiff refused because there was no legal material. She then took property away because Plaintiff would not sign for incomplete property form. After Cpl. Morgan and Cpl. Kromka finally located legal material, property was finally returned to Plaintiff on March 22, exactly a month after disciplinary incident. Plaintiff later discovered that blue binder tablet containing

## III

vital legal notes and papers had been lost or discarded by property officers.

Later, in April, 2002, Plaintiff was found guilty in cursory hearing by Staff Lt. Bernie Williams. When Plaintiff sent him appeal form, he refused to send it to Appeal Chief, Special Programs Director Anthony Rendina, denying Plaintiff's right to appeal. Even though DOC policy clearly stated that an appeal would stay the disciplinary sanction imposed, Hearing Officers Capt. Green, Staff Lt. Bernie Williams, Staff Lt. Roberts and Lt. Savage circumvent policy by holding cursory hearings after isolation period is over in order to prevent inmates from staying disciplinary sanctions pending decision of Appeal Officer.

In November, 2002, after complaining and filing several grievances concerning SHU officers C/o Neal and C/o Jackson refusing to serve breakfast sanitarily by wearing protective headgear, Plaintiff began to refuse to eat breakfast after finding hair particles and contracting food poisoning. In retaliation, C/o Neal threw hot coffee in cell at Plaintiff. Fortunately, Plaintiff was not struck by this incident but he filed grievance where he angrily told prison officials that he would try to kill officer if this officer ever threw hot coffee on him. To this grievance, Capt. Belanger and Major Cunningham covered up C/o Neal's actions by reenacting a false scenario where they pretended that coffee had accidentally spilled from tray. Plaintiff was then moved to another building away from C/o Neal.

After being moved, Plaintiff immediately began to be harassed by Sgt. Michael Moran. Sgt. Moran had recently been

## IV

Knocked out by black inmate after he had instigated a racial incident and had pressed criminal charges against inmate. He also had cut water off from showers on another black inmate and instigated a confrontation with QRT by saying that the black inmate was disorderly and threatening while in shower.

When Plaintiff came on tier, he became Sgt. Moran's target. He at first refused to allow Plaintiff to use any clean shower. Later, when Plaintiff attempted to use upstairs shower, Sgt. Moran snatched his arm while he was handcuffed in rear and pulled him halfway down the stairs, almost causing serious injury as Plaintiff stumbled downstairs. He then pulled Plaintiff to his cell with c/o Atkins and other unnamed c/o and slammed his arm in cell door, bruising it.

Plaintiff wrote grievances concerning Sgt. Moran's actions but they were denied or ignored. At other times, Sgt. Moran would refuse to allow Plaintiff out of his cell for rec and shower, and falsify disciplinary reports and say that Plaintiff refused. After last incident of assault against Plaintiff, Plaintiff finally took matters into his own hands and threw soap bar that hit Sgt. Moran in the head. For this action, Plaintiff was sent to isolation for 15 days without a hearing. On the last day of isolation, Lt. Savage decided to have a cursory hearing and find Plaintiff guilty so that an appeal would be futile.

In an act of deliberate indifference to Plaintiff and staff safety in Dec., 2002, prison officials transferred Plaintiff back

V

to same building racist officer, Sgt. Moran. Sgt. Moran immediately began the same harassment that he had done earlier by refusing to allow Plaintiff right to exercise and shower and filing false disciplinary actions against him. It was only after Plaintiff threatened to punch Moran in the face if he tried to handcuff him, that he finally stopped harassing Plaintiff. Sgt. Moran had already been knocked out twice in recent months by black inmates. Sgt. Moran was finally forced to take early retirement after assaulting another inmate while handcuffed; however, the inmate that was assaulted was Caucasian.

In February, 2003, Plaintiff began to be harassed by c/o Harris after filing numerous grievances against staff for unsanitary conditions and health and safety violations. c/o Harris took exception to this and ordered retaliatory shakedown on Plaintiff with c/o Newman and c/o Baynard. During shakedown, c/o Harris immediately began to read and search through Plaintiff's legal mail and cases. Because Plaintiff's jumpsuit was partially open, exposing his "fly," c/o Harris asked him loudly whether he was a homosexual. He then took that opportunity to grab Plaintiff and drag him down hallway, while handcuffed, showing other inmates his open "fly" and yelling that Plaintiff was a homosexual.

After completing "shakedown," he then took one handcuff off and held Plaintiff's wrist and said that "he was waiting for Plaintiff to make a wrong move." At this point, c/o Baynard told c/o Harris that "it was his call," the code for an assault on an inmate. After threatening Plaintiff for a few minutes, c/o Harris finally uncuffed Plaintiff's other wrist and told him that

## VI

"We'll be back."

After complaining in several grievances to prison officials about c/o Harris's threats and attempted assault, along with his personal knowledge and possible involvement in fellow officer's drug dealing, c/o Harris began to label Plaintiff as a snitch to other inmates. In one incident, c/o Harris had repeatedly complained to another inmate about Plaintiff. This inmate was allowed to throw alleged urine on Plaintiff during his yard time on c/o Harris's watch. No disciplinary action was taken against this inmate.

Finally, Capt. Belanger told Plaintiff that he was going to transfer him to another building away from c/o Harris in March, 2003. After discussion and investigation of c/o Harris, Harris came on tier and threatened Plaintiff in front of everyone and called him a snitch and said that "he was going to get Plaintiff's ass." He later came down with c/o Wynder to handcuff and shackle Plaintiff to transfer. Because he did not have cart to transfer property, Plaintiff immediately suspected foul play and told c/o Harris that he needed a cart to transfer his property. C/o Harris said that "he wasn't getting any cart and to bring [Plaintiff's] ass on." Plaintiff stated that "he wasn't leaving until he got a cart." C/o Harris then tried to pull and grab Plaintiff out of his cell. Plaintiff pushed him back in self defense. C/o Harris then looked at c/o Wynder and charged at Plaintiff. Plaintiff picked up ink pen in self-defense and c/o Harris and c/o Wynder shut cell door and ran to control room to get Sgt. Lawrence.

## VII

When Sgt. Lawrence returned with c/os Harris and Wynder, Plaintiff told Sgt. Lawrence that "he didn't want c/o Harris to touch him and he was not going to let him handcuff him." After Sgt. Lawrence handcuffed Plaintiff, he let c/os Harris and Wynder transfer him to Bldg. 19 unsupervised. While going to Bldg. 19, Plaintiff was brought to Bldg. 20 to see Lt. Welcome. Even though Lt. Welcome had been informed that c/o Harris had been abusing and threatening Plaintiff, he ordered c/o Harris to have contact with Plaintiff by handcuffing him. He then told c/o Harris to write false report of assault against Plaintiff and allowed c/o Harris to continue to abuse, taunt and bump cart against Plaintiff while he was handcuffed and shackled.

After being transferred to Bldg. 19, Plaintiff began to experience difficulty with night-time officers, not serving food properly and sanitarily. Plaintiff filed several grievances and made complaints at least six times to Sgt. Evans and his staff. Because officers refused to wear hats, Plaintiff was experiencing food poisoning and nausea. Again, his complaints were unheard and ignored. In protest, Plaintiff began to throw his tray outside when flap was opened, forcing guards to pick it up. When Sgt. Evans asked Plaintiff why he threw out tray, Plaintiff told him that "he was tired of telling your guards to wear headgear while serving chow." Sgt. Evans then threw a "sucker" punch at Plaintiff, striking him in the nose, through the flap vent. He then closed vent before Plaintiff could retaliate.

For the next few nights, Sgt. Evans told officers not to feed Plaintiff. In retaliation and in order to get Lieutenant

## VIII

to come on tier, Plaintiff began to throw urine unsuccessfully at Sgt. Evans and his staff. Lt. Gattis came to tier and immediately wanted to discipline Plaintiff, but Plaintiff told him that he needed to straighten out Sgt. Evans for punching Plaintiff and not feeding him for the last three days. Lt. Gattis then filed false incident report by saying that Plaintiff was suicidal and had several officers escort Plaintiff to the Medical Infirmary Unit. He refused to address Plaintiff's complaints of being assaulted and not being fed by Sgt. Evans.

Plaintiff spent three days in Infirmary for observation and it was determined that Plaintiff was not suicidal and he was released. Lt. Harvey, Capt. Sagers, and Deputy Warden McGuigan then showed callous disregard to both Plaintiff's and officer's health and safety by placing Plaintiff in same cell so Sgt. Evans could instigate another incident with Plaintiff. Plaintiff was told by Sgt. Dunnington after leaving the infirmary to contact Staff Lt. Burton, the Shift Commander, if he had any more problems with Sgt. Evans.

On the next morning, July 27, 2003, Plaintiff was given his opportunity to confront Sgt. Evans by throwing try to strike him after breakfast. Sgt. Evans then called Lt. Stanton, a fellow racist, to take Plaintiff to "the hole." Plaintiff informed Lt. Stanton that he needed to speak to Shift Commander, Staff Lt. Burton. Instead of notifying Shift Commander and following policy before use of force, Lt. Stanton summoned QRT① in order to assault Plaintiff. QRT① officers c/o Neal, c/o Stevenson, c/o Jackson, c/o Mike Doe, et al, along with Lt. Stanton immediately began to punch Plaintiff in