IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KEVIN L. DICKENS,                    :
                                     :
            Plaintiff,               :
                                     :
      v.                             : Civil Action No. 04-201-JJF
                                     :
                                     :
COMMISSIONER STAN TAYLOR,            :
BUREAU CHIEF PAUL HOWARD,            :
RICHARD EUGENE SEIFERT,              :
ANTHONY RENDINA, IBCC, JOHN          :
RYAN, MIKE LITTLE, JOE HUDSON        :
MS. HAVEL, CPL. ONEY, WARDEN         :
TOM CARROLL, DEP. WARDEN             :
BETTY BURRIS, DEP. WARDEN            :
MCGUIGAN, MAJOR CUNNINGHAM,          :
CAPT. SAGERS, CAPT. BELANGER         :
STAFF LT. B. WILLIAMS, STAFF         :
LT. BURTON, LT. SAVAGE,              :
IGC LISE MERSON, SGT. EVANS          :
SGT. MORAN, C/O HARRIS,              :
SGT. TYSON, C/O NEAL, QRT1,          :
LT. STANTON, C/O GARDELS,            :
LT. HARVEY, LT. SECORD,              :
LT. WELCOME, C/O RAINEY,             :
QRT2, JAYME JACKSON,                 :
LT. PORTER, CPL. KROMKA,             :
COUNSELOR KROMKA, KRAMER,            :
ZANDA, BRIAN ENGRAM, RON             :
DRAKE MAJOR HOLMAN, FIRST            :
CORRECTIONAL MEDICAL,                :
DR. ARRONBURL, NURSE BRENDA          :
HOLWERDA, NURSE COURTNEY DOE,        :
NURSE CINDY DOE, MEDICAL             :
DIRECTOR, DELAWARE CENTER FOR        :
JUSTICE, SHAKEERAH HAIKAL,           :
CAMILLE PRINGLE, LITTLETON           :
MITCHELL, and FRANK SCARPETTI,       :
                                     :
            Defendants.              :

**MEMORANDUM OPINION**

November __3__, 2006
Wilmington, Delaware

**Farnan, District Judge**

Plaintiff Kevin L. Dickens, an inmate at the Delaware Correctional Center ("DCC"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He appears <u>pro se</u> and was granted leave to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915. (D.I. 4.) Although the Complaint was filed in 2004, service has not taken place for a number of reasons, most notably confusion over the filing of multiple Amended Complaints. On July 27, 2006, Plaintiff advised the Court that he wished to proceed on the original Complaint. (D.I. 29, 30.)

For the reasons discussed below, the Court will dismiss the conditions of confinement claim in Count A brought against Defendants C/O Neal and C/O Jackson; the false disciplinary report (due process) claim in Count A brought against Defendants Sgt. Moran and Sgt. Evans; the access to court claim in Count A brought against Defendant Cpl. Kromka; the failure to protect claim in Count A brought against Defendant Staff Lt. Burton; the grievance claim in Count A brought against Defendants Major Cunningham and Capt. Belinger; the general access to the courts (law library) claim in Count C; the excessive force claim in Count D brought against Defendants Lt. Stanton and Sgt. Evans; the failure to protect claim in Count D brought against Deputy Warden McGuigan; the due process claims in Count D brought against Bureau Chief Paul Howard and Commissioner Stan Taylor;

-1-

Counts E and F of the Complaint; and the claims against
Defendants Delaware Center for Justice, Shakeerhah Haikal, Ms.
Havel, Joe Hudson, Institutional Base Classification Committee
"IBBC", Kramer, Counselor Kromka, Mike Little, IGC Lise Merson,
Littleton Mitchell, Lt. Porter, Camille Pringle, Quick Response
Team ("QRT") 1, QRT2, Anthony Rendina, John Ryan, Lt. Savage,
Frank Scarpetti, Richard Eugene Seifert, Lt. Welcome, Staff Lt.
B. Williams, and Zanda as frivolous and for failure to state a
claim upon which relief may be granted pursuant to 28 U.S.C. §
1915(e)(2)(B) and § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).
The Court will direct the Clerk's Office to correct the docket
sheet by removing as a Defendant Ms. Hard.  The Court will enter
a Service Order on the remaining claims.

## I.    THE COMPLAINT

Plaintiff filed his original Complaint on April 1, 2004,
against 53 defendants.  Plaintiff alleges violations of the
First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the
U.S. Constitution.  (D.I. 2, at V.)  The Complaint contains six
counts, but many of the claims in Counts A and D are duplicative.
Plaintiff seeks compensatory and punitive damages, and injunctive
relief.

Count A alleges unlawful conditions of confinement,
excessive force, failure to investigate, retaliation, denial of
access to the courts, improper disciplinary proceedings, failure

to protect, and inadequate medical care (D.I. 2, at I-XIII.)
Count A is brought against Defendants Sgt. Teddy Tyson ("Tyson"),
Deputy Warden Betty Burris ("Deputy Warden Burris"), Major Holman
("Holman"), Cpl. Kromka ("Cpl. Kromka"), Staff Lt. Bernie
Williams ("Williams"), Lt. Savage ("Savage"), C/O Neal ("Neal"),
C/O Jackson ("Jackson"), Major Cunningham ("Cunningham"), Capt.
Belanger ("Belanger"), Sgt. Michael Moran ("Moran"), C/O Harris
("Harris"), Lt. Welcome ("Welcome"), Sgt. Evans ("Evans"), Lt.
Secord ("Secord"), Capt. Sagers ("Sagers"), Deputy Warden
McGuigan ("Deputy Warden McGuigan"), Staff Lt. Burton ("Burton"),
Lt. Stanton ("Stanton"), QRT1, Nurse Courtney Doe ("Courtney
Doe"), Nurse Cindy Doe ("Cindy Doe"), Lt. Harvey ("Harvey"),
QRT2, C/O Rainey ("Rainey") and C/O Gardels ("Gardels").

Count B alleges denial and lack of adequate medical care and
unsanitary conditions. Id. at XIII-XXI. Count B is brought
against Defendants Bureau Chief Paul Howard ("Bureau Chief
Howard"), Commissioner Stan Taylor ("Commissioner Taylor"), First
Correctional Medical ("FCM"), Nurse Administrator Brenda Holwerda
("Holwerda"), Courtney Doe, Cindy Doe, Warden Tom Carroll
("Warden Carroll"), Deputy Warden McGuigan, Camille Pringle
("Pringle"), Medical Director, and Dr. Arronburl, ("Dr.
Arronburl").

Count C alleges a denial of legal access and right to
counsel and is brought against Defendants Law Librarian Brian

Engram ("Engram"), Savage, Mike Little ("Little"), John Ryan ("Ryan"), Cpl. Kromka, Commissioner Taylor, and Cpl. Oney ("Oney").  Id. at XXI-XXV.  Count D alleges the imposition of retaliatory sanctions, failure to protect, and violations with respect to disciplinary procedures such as the denial of witnesses and the right to confrontation, and not being advised of prison disciplinary charges.  Count D is brought against Defendants Williams, Savage, Rendina, Tyson, Moran, Cunningham, Belanger, Drake, Howard, Commissioner Taylor, Stanton, Evans, Sagers, Harvey, Burton, Deputy Warden McGuigan, and Warden Carroll.  Id. at XXVI-XXIX.  Count E alleges  claims for failure to follow prison grievance procedures and is brought Defendants Cpl. Merson ("Merson"), Deputy Warden Burris, Assistant Bureau Chief Richard Seifert ("Seifert"), the Delaware Center for Justice, Shakeerah Haikal ("Haikal"), Pringle, Littleton Mitchell ("Mitchell"), Frank Scarpetti ("Scarpetti"), and FCM.  Id. at XXIX-XXXI.  Finally, Count F alleges discriminatory classification and unlawful loss of privileges, and is brought against Defendants Belanger, Cunningham, Counselor Kramer ("Kramer"), Counselor Tom Zanda ("Zanda"), IBCC, Jackson, and Rendina.  Id. at XXXII-XXIV.

## II.  STANDARD OF REVIEW

When a litigant proceeds in forma pauperis, 28 U.S.C. § 1915 provides for dismissal under certain circumstances.  When a

prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the Court.  When a prisoner challenges prison conditions the screening provisions of 42 U.S.C. § 1997e(c)(1) apply.  All three statutes provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief.  These sections require the Court to "dismiss an in forma pauperis claim if it determines that the claim is of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1089 (3d Cir. 1995).

Pro se complaints are liberally construed in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  The Court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)).  An action is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Additionally, a pro se complaint can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519,

-5-

520-521 (1972)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

**III. ANALYSIS**

    **A.   Persons - 42 U.S.C. § 1983**

    Plaintiff raises claims against the IBCC, QRT1, QRT2, and the Delaware Center for Justice.  To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of his rights.  <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330 (1986).  These Defendants are not "persons" subject to suit under 42 U.S.C. § 1983.  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989).  If Plaintiff wishes to bring suit against a member of the IBCC or the Quick Response Teams then he must name each individual.  Thus, the IBCC, QRT1, QRT2, and the Delaware Center for Justice are not proper defendants to this action, and therefore, the Court will dismiss all Plaintiff's claims against them pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

    **B.   Personal Involvement**

    Joe Hudson ("Hudson"), Lt. Porter ("Porter"), Ms. Havel "(Havel"), and Counselor Kromka are named as Defendants in the caption of this case.  These four individuals are mentioned a second time in the "Section III. C. Parties," as additional defendants.  However, the Court has read the Complaint numerous times and has found no other mention of these Defendants.

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (citing <u>Boykins v. Ambridge Area Sch. Dist.</u>, 621 F.2d 75, 80 (3d Cir. 1980); <u>Hall v. Pennsylvania State Police</u>, 570 F.2d 86, 89 (3d Cir. 1978)). Additionally, when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

Because there are no allegations that Defendants Hudson, Porter, Havel, and Counselor Kromka had any personal involvement in depriving Plaintiff of a federal right, the Court will dismiss these Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**C.    Access to Courts**

In Count A Plaintiff alleges that he was sent to isolation on February 22, 2002, and during that time he was a defendant in a criminal trial. (D.I. 2, at I.) Plaintiff alleges that the trial judge ordered correctional officers to return legal documents that had been taken from him. <u>Id</u>. Plaintiff alleges that unnamed correctional officers refused to give the documents to him, but that on March 22, 2002, Cpl. Kromka located the legal material and returned it to him. <u>Id</u>. Also, in Count C,

Plaintiff alleges that because he is housed in Security Housing Unit ("SHU"), he does not receive the same type of paralegal services as non-SHU inmates.

Plaintiff appears to allege an access to the courts claim against Cpl. Kromka.  Denial of access to legal documents may constitute a violation of a prisoner's First Amendment right to petition the courts and/or Fourteenth Amendment due process rights.  Zilich v. Lucht, 981 F.2d 694, 695 (3d Cir. 1992).  The allegations are, however, that Cpl. Kromka located and returned the legal documents to Plaintiff; not that he deprived Plaintiff of the legal materials.  Accordingly, the Court concludes that count A fails to state a claim against Cpl. Kromka upon which relief may be granted, and therefore, the Court will dismiss the claim in Count A brought against Cpl. Kromka.

Plaintiff alleges in Count C that because he is housed in SHU he does not receive the same sort of access to the law library as inmates in less restricted housing.  As is well known, persons convicted of serious crimes and confined to penal institutions retain the right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).  This access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828.  This right "must be exercised

with due regard for the 'inordinately difficult undertaking' that is modern prison administration." Thornburgh v. Abbott, 490 U.S. 401, 407 (1989) (quoting Turner v. Safley, 482 U.S. 78, 85 (1987).  Thus, courts have been called upon to review the balance struck by prison officials between the penal institution's need to maintain security within its walls and the rights of prisoners.  Howard v. Snyder, 389 F. Supp. 2d 589, 593 (D. Del. 2005).

All that is required is that Plaintiff have at least access to a prison paralegal or paging system by which to obtain legal materials.  Abdul-Akbar v. Watson, 4 F.3d 195, 203 (3d Cir. 1993) (in the case of segregated prisoners who do not have access to an institution's main law library, the law requires they must have some means by which documents and materials can be identified and furnished to them in a timely fashion).  By Plaintiff's own admission, he is not being deprived of access to the law library. Rather, his access is limited.  Accordingly, the Court will dismiss the access to courts law library claim alleged in Count C as  frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

D.   **Eighth Amendment Claims**

1.   **Conditions of Confinement**

In Count A, Plaintiff also alleges that Defendants Neal and

Jackson refused to serve breakfast in a sanitary manner by wearing protective headgear. (D.I. 2, at III.)  This claim, liberally construed, alleges a condition of confinement claim.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of the minimal civilized measure of the necessities of life.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The Court concludes that serving breakfast without "protective headgear" is not so reprehensible as to be deemed inhumane.  Accordingly, the Court concludes that Plaintiff's conditions of confinement claim against Neal and Jackson is frivolous, and therefore the Court will dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

## 2.  Excessive Force/Failure to Protect

The Complaint alleges that Plaintiff was the victim of Defendant C/O Harris' retaliation and harassment.  Plaintiff appears to allege either an excessive force or failure to protect claim in Count A against Lt. Welcome when he alleges that Welcome allowed Harris to come into contact with Plaintiff when Harris handcuffed Plaintiff.  (D.I. 2, at VI.)  Plaintiff also alleges that Welcome told Harris to write a false report against Plaintiff and that he allowed Harris to taunt him and bump him

-10-

with a cart when Plaintiff was handcuffed and shackled.  Id.

Although not clear, Plaintiff also appears to allege a failure to protect claim against Staff Lt. Burton in Count A. Plaintiff alleges that he had altercations with Sgt. Evans and that Staff Lt. Burton told Plaintiff to contact him if the problems continued.  Id. at VIII.  Plaintiff alleges that Burton ordered a shakedown of his cell after Plaintiff refused to allow Sgt. Evans and his staff to conduct a security count, but that no contraband was found, and Plaintiff returned to his cell.  Id. Plaintiff also alleges that Burton ordered SHU officers to feed him.  Id.

To state a claim for excessive force under the Eighth Amendment, a prisoner must allege that force was applied maliciously or sadistically to cause harm.  Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element).  See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994); see also Griffin v. DeRosa, 153 Fed. Appx. 851, 2005 WL 2891102 (3d Cir. 2005).

The Court concludes that the allegations against Welcome and

-11-

Burton do not rise to the level of a violation of the Eighth
Amendment based on either the use of excessive force or a failure
to protect.  Accordingly, the Court will dismiss these claims
pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

To the extent Count D contains allegations of excessive
force and failure to protect against Defendants Stanton, Evans,
and McGuigan, the Court concludes that these claims are
duplicative of those raised in Count A.  (D.I. 2, at XXVII.)
Plaintiff's allegations fail to rise to the level of an Eighth
Amendment violation, and therefore, the Court will dismiss the
claims in Count D brought against Defendants Stanton, Evans, and
Deputy Warden McGuigan.

### 3.  Medical Claim

In Count B, Plaintiff appears to allege that Pringle of the
Delaware Center for Justice was deliberately indifferent to his
medical needs.  He alleges that his mother contacted Pringle
regarding medical treatment he needed, and Pringle indicated that
she would contact the Department of Correction ("DOC") regarding
the matter.  Id. at XVIII.

The Eighth Amendment proscription against cruel and unusual
punishment requires that prison officials provide inmates with
adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-105
(1976).  However, in order to set forth a cognizable claim, an
inmate must allege (i) a serious medical need and (ii) acts or

-12-

omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. at 837. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

The allegations against Pringle do not allege indifference to Plaintiff's plight. Rather, Plaintiff alleges that Pringle indicated she would take steps to contact the Delaware DOC. Moreover, it is not clear that Pringle is a state actor[1] which is a required for a § 1983 claim. Accordingly, the Court concludes that the claim against Pringle in Count B is frivolous, and therefore, the Court will dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**E.    Due Process**

Several counts of the Complaint contain due process claims.

_____

[1]To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)) (overruled in part on other grounds Daniels v. Williams, 474 U.S. 327, 330-31 (1986)). To act under "color of state law" a defendant must be "clothed with the authority of state law." West, 487 U.S. at 49.

Plaintiff was held in isolation from February 22, 2002 until
March 2002.  He alleges in Count D that he was given a "cursory"
hearing by Williams and found guilty.  (D.I. 2, at XXVI.)
Plaintiff alleges in Counts A and D that after he was found
guilty of a disciplinary charge in April 2002, Defendant Williams
refused to send his appeal to Appeals Chief, Anthony Rendina.
Id. at II-III.  In Count D Plaintiff also alleges that Williams
has a bias against inmates.  Id. at IV.

In Count A, Plaintiff alleges that when he was sent to
isolation in April 2002, Defendant Savage circumvented prison
policy by holding a cursory disciplinary hearing after the
isolation period had ended.  Id. at III.  Plaintiff alleges this
was done to prevent the staying of sanctions pending appeal.  Id.
Plaintiff also alleges that when he was placed in isolation for
15 days as a result of a "soap throwing incident", Savage
conducted a cursory hearing on the last day of his isolation and
found Plaintiff guilty so that an appeal would be futile.  Id. at
IV.

Count A also contains allegations that Defendants Moran and
Evans fabricated or wrote false disciplinary reports.  Id. at V,
VI.  The alleged false reports authored by Moran concerned
Plaintiff's refusal to leave his cell to shower or exercise.  Id.
The alleged report by Evans concerned a "coffee throwing"
incident.

-14-

In Count C, Plaintiff alleges that he received a
disciplinary report for possession of a letter which he contended
was a "legal document".  Id. at XXII-XXIII.  Plaintiff explains
that the letter was from a fellow inmate in response to an
investigation by the U.S. Department of Justice.  Plaintiff takes
exception to the prison rule which precludes collaboration by
prisoners on legal claims.  Id. at XXIII.  He alleges that Savage
violated his constitutional rights when he did not return the
letter following the disciplinary hearing, "even though prison
policy mandates that confiscated legal papers be returned to
owner".  Id.

In Count D, Plaintiff alleges that Savage is biased against
inmates during hearings and that he delays appeals.  Id. at XXVI.
More particularly, he alleges that he was sent to isolation
without a hearing where he remained from November 26 through
December 11, 2003.  Id. at XXVII.  Plaintiff alleges that Savage
waited until after Plaintiff served his sanction before holding a
hearing on the last day of his isolation.  Id.  He alleges that
Savage refused to send his appeal to the appeals officer.  Id.
Additionally, Plaintiff alleges that when he was sent to
isolation from July 27, 2003, through August 11, 2003, for a tray
throwing incident, Savage gave him a cursory hearing and found
him guilty.  Id.  Finally, Plaintiff alleges that after he
received a disciplinary report for barricading himself in his

-15-

cell, Savage provided him a cursory hearing on October 29, 2003, a month after his release from isolation. Id. at XXIX.

In Count D, Plaintiff also alleges that Appeals Officer Rendina violated his constitutional rights by supporting the hearing officers' findings. Id. Plaintiff also alleges that he complained to Rendina, Howard, and Taylor of Savage's actions and that they either ignored or condoned the actions of Savage. Id. at XXVII-XXVIII.

While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). The requirements of due process in prison disciplinary hearings are that an inmate is entitled to (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-71. A right to appeal disciplinary convictions is not within

the narrow set of due process rights delineated in Wolff.
Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D.Pa. 1983); Greer
v. DeRobertis, 568 F. Supp. 1370 (N.D.Ill. 1983).

In reading Plaintiff's Complaint, the Court concludes that
he was afforded basic due process protections as outlined in
Wolff.  Indeed, hearings were held and findings were made by the
hearing officers.  As discussed above, an appeal of a
disciplinary conviction is not within the narrow set of due
process rights delineated in Wolff, and therefore, the Court
concludes that Plaintiff's regarding delay or impediment of his
appeals fail to state a claim.  As for Plaintiff's allegation
that Savage violated his constitutional rights when he failed to
return to a document Plaintiff describes on the one hand as
"legal", and on the other hand as one from a fellow inmate, the
Court notes that the Supreme Court has upheld restrictions on
inmate-to-inmate communications.  See Shaw v. Murphy, 532 U.S.
223 (2001); Turner v. Safley, 482 U.S. 78, 89 (1987).  Savage did
not violate Plaintiff's constitutional rights by not returning
the letter at issue.

As for Plaintiff's other due process allegations, the Court
concludes that none are cognizable as § 1983 claims under the
holding of Wolff.  It is axiomatic that to be entitled to
procedural due process protections as set forth in Wolff, a
prisoner must be deprived of a liberty interest.  See Wolff, 418

-17-

U.S. at 557-558.  The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed."  Sandin v. Conner, 515 U.S. 472, 480 (1995) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  Further, state created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (quoting Sandin, 515 U.S. at 484).  Finally, neither Delaware law nor DOC regulations create a liberty interest in a prisoner's classification within an institution.  See Del. Code. Ann. tit. 11, § 6529(e).

Plaintiff complains that on several occasions he was placed in isolation and a hearing was not held until either after his release from isolation or towards the end of his confinement there.  He also complains that Defendants' actions resulted in the filing of false disciplinary charges and related disciplinary sanctions.  In the Court's view, these claims, without more, do not violate Plaintiff's constitutional rights under the Due Process Clause.  See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).  Plaintiff's due process rights are triggered by a deprivation of a legally cognizable liberty interest which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v.

-18-

Conner, 515 U.S. at 484.

The Third Circuit has held that a state prisoner's confinement in administrative segregation for 15 months did not impose an atypical and significant hardship on the prisoner. Griffin, 112 F.3d at 706-09; see Sack v. Canino, No. Civ. A. 95-1412, 1995 WL 498709, *1 (E.D.Pa. Aug. 21, 1995)(assuming that the plaintiff was not afforded the protections called for by Wolff, because the sanction of 30 days disciplinary confinement did not implicate a liberty interest, such infraction did not violate the plaintiff's due process rights). Here, Plaintiff complains of stints in isolation, none for more than two months. Accordingly, the Court cannot conclude that these small amounts of time implicate a protected liberty interest.

Accordingly, the Court will dismiss Plaintiff's due process claims against Defendants Williams (Counts A and D); Savage (Counts A, C, and D); Moran (Count A); Evans (Count A); Rendina (Count D); Howard (Count D); and Taylor (Count D) as either frivolous or for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1) and 1915(e)(2)(B)(ii).

**F.   Grievances**

The Complaint contains several claims regarding grievances filed by Plaintiff, the procedure used to resolve grievances, and the denial of grievances. Plaintiff alleges in Count A that

-19-

Neal threw coffee at him, but it did not hit him[2]. (D.I. 2, at III.) Plaintiff filed a grievance in connection with the incident and alleges that Cunningham and Belinger responded to the grievance by covering up Neal's actions. Id.

In Count C, Plaintiff alleges that he filed grievances regarding the actions of law librarian Engram in his assistance or lack thereof to Plaintiff in meeting court deadlines. Id. at XXIII. Plaintiff alleges that Engram's supervisors, Little and Ryan, denied the grievances. Id.

In Count E, Plaintiff alleges that he was transferred to SHU in March 2002, and "noticed" that Merson refused to follow grievance procedures by rejecting grievances sua sponte or by not holding a hearing. Id. at XXIX. He further alleges that Merson rejects grievances under the category of "other", has denied many of his grievances, and has never granted him a hearing. Id. Plaintiff alleges that when Merson did not resolve his grievances he sent his grievances directly to Deputy Warden Burris who condoned and signed off on the grievances rejected by Merson. Id. Plaintiff alleges he complained of Merson's actions to Seifert, and that Seifert condoned Merson's actions. Id. at XXX. Similarly, Plaintiff alleges that FCM refuses to grant him

---

[2]The action of Neal in throwing coffee at Plaintiff does not state a constitutional claim since the coffee missed Plaintiff and there is no indication he was harmed as a result of the "coffee throwing incident".

hearings on medical grievances he filed.  Id. at XXXI.

Plaintiff also alleges in Count E that the Delaware Center for Justice had a contract with the DOC to oversee and certify the inmate grievance procedure.  Id.  He alleges that the Delaware Center for Justice violated his constitutional rights by certifying DOC Inmate Grievance Policy 4.4.  Id.  Plaintiff further alleges that Delaware Center for Justice's employees, Haikal, Pringle, Mitchell, and Scarpetti either ignored or failed to answer his numerous complaints and grievances.[3]  Id.

Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances.  Booth v. King, 346 F. Supp. 2d 751, 761(E.D.Pa. 2004).  This is because inmates do not have a constitutionally protected right to a grievance procedure.  Burnside v. Moser, No. 04-4713, 138 Fed. Appx. 414, 415 (3d Cir. 2005)(not precedential) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)).  Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights.  Hoover v. Watson, 886 F. Supp. 410, 418-419 (D. Del.), aff'd 74 F.3d 1226 (3d Cir. 1995).  Moreover, "[t]he failure of a prison official to provide a favorable

---

[3]Again, it is not clear these Defendants are state actors.  See supra n.3, at 13.

response to an inmate grievance is not a federal constitutional violation." Gordon v. Vaughn, 1999 WL 305240, at *2, (E.D.Pa. May 12, 1999) (citing Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Therefore, "'[i]f the state elects to provide a grievance mechanism, violations of its procedures do not. . .give rise to a 1983 claim."' Hoover, 886 F.Supp. at 418-19 (quoting Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986)).

Plaintiff cannot maintain constitutional claims based upon an inadequate grievances system, that grievances were denied, that he was not provided a hearing upon the filing of a grievance, or that his grievances were not addressed. Therefore, the Court will dismiss the grievance issue claims against Cunningham and Belinger in Count A; Little and Ryan in Count B; and Count E in its entirety brought against Defendants Merson, Deputy Warden Burris, Seifert, Delaware Center for Justice, Haikal, Pringle, Mitchell, Scarpetti, and FCM for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## G. Classification/Privileges/Discrimination

In Count F, Plaintiff attempts to raise claims against Defendants Belanger, Cunningham, Counselor Kramer, and Zanda. He alleges that the SHU staff uses televisions as punishment against inmates who break prison rules. (D.I. 2, at XXXII.) Plaintiff alleges that Belanger, Cunningham, and SHU counselors "concocted

-22-

a policy of only letting inmates at the QOL Level II receive televisions.  Id.  Plaintiff alleges that although he completed the first level of programming, Counselor Kramer and SHU staff refused to grant him a television despite his being at QOL Level II.  Id.  He further alleges that his level was decreased to Level I in March 2003 and since that time Zanda continued the discriminatory practice.  Id. at XXXII-XXXIII.  Plaintiff also alleges that Belanger and Cunningham discontinued name brand cereals in SHU and instead provide generic cereal.  Plaintiff complains this action was not taken against non-SHU inmates.  Plaintiff further alleges that SHU inmates are not given cold fresh water to drink during meals.  Id. at XXXIII.

     "Lawful incarceration brings about the necessary withdrawal or limitation of many rights."  Price v. Johnston, 334 U.S. 266 (1948).  In order to succeed on an Eighth Amendment claim for denial of "privileges," a plaintiff must show that "the deprivation at issue is sufficiently serious and that the prison official was deliberately indifferent to his plight."  Todd v. Walters, 166 Fed. Appx. 590, 2006 WL 73132, at *2 (3d Cir. Jan. 5, 2006).

     Plaintiff complains that he was denied television privileges and that this is a form of discrimination.  Television privileges, however, do not constitute necessities.  See Pepper v. Carroll, 423 F. Supp. 2d 442 (D. Del. 2006).  Nor does the

-23-

serving of brand name cereals.  Plaintiff also complains that he
is not given cold fresh water during meal time, yet acknowledges
he is given chlorinated water.  The Court concludes that
Plaintiff's television, brand name cereal, and water claims are
frivolous and do not rise to the level of constitutional
violations.  Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B)
and § 1915A(b)(1), the Court will dismiss without prejudice the
claims against Belanger, Cunningham, Counselor Kramer, and Zanda.

Plaintiff also alleges in Count F that the classification
process is unfair and arbitrary because it is based upon factors
such as age, unsentenced charges, disciplinary sanctions for an
outside institution, and disciplinary sanctions imposed during a
previous incarceration.  He also alleges the classification
process is discriminatory because the majority of the inmates in
SHU are Black, but there is a high percentage of White inmates in
minimum security.  Finally, Plaintiff complains that neither the
IBCC, Jackson or Rendina responded to his requests to appeal his
classification.

Initially, the Court notes that inmates have "no legitimate
statutory or constitutional entitlement" to any particular
custodial classification even if a new classification would cause
that inmate to suffer a "grievous loss."  Moody v. Daggett, 429
U.S. 78, 88 n.9 (1976).  Moreover, neither Delaware law nor
Delaware DOC regulations create a liberty interest in a

-24-

prisoner's classification within an institution.  See Del. Code
Ann. tit. 11, § 6529(e).  "'As long as the conditions or degree
of confinement to which [a] prisoner is subjected is within the
sentence imposed upon him and is not otherwise violative of the
Constitution, the Due Process Clause does not in itself subject
an inmate's treatment by prison authorities to judicial
oversight."'  Hewitt v. Helms, 459 U.S. 460, 468 (1983) (quoting
Montanye v. Haymes, 427 U.S. 236, 242 (1976)).

It has thus been determined that the transfer of a prisoner
from one classification is unprotected by "'the Due Process
Clause in and of itself,"' even though the change in status
involves a significant modification in conditions of confinement.
Hewitt, 459 U.S. at 468 (citation omitted); Moody v. Daggett, 429
U.S. 78 (1976); see also Lott v. Arroyo, 785 F. Supp. 508, 509
(E.D.Pa. 1991) (plaintiff transferred from group home to
correctional facility had no constitutionally enforceable right
to participate in work release program); Brown v. Cunningham, 730
F. Supp. 612 (D. Del. 1990) (plaintiff's transfer from general
population to administrative segregation, without being given
notice and opportunity to challenge it, was not violation of
plaintiff's liberty interest).  Plaintiff has no property or
liberty interest in the classification program or his housing
assignment.  Nor can Plaintiff's assignment to SHU housing be
viewed as falling outside the scope of "the sentence imposed upon

him [or] otherwise violative of the Constitution."  Therefore,
the Court will dismiss the classification claims brought against
the IBCC, Jackson and Rendina.

In Count F, Plaintiff makes the conclusory allegation that
there is discrimination because the majority of inmates in SHU
are black, while there is a large percentage of White inmates in
minimum security housing.  "Prisoners are protected under the
Equal Protection Clause of the Fourteenth Amendment from
invidious discrimination based on race."  Wolff v. McDonnell, 418
U.S. 539, 556 (1974).  In order to raise a valid equal protection
claim, a plaintiff must show that "he has been treated
differently from others with whom he is similarly situated and
that the unequal treatment was the result of intentional or
purposeful discrimination."  Morrison v. Garraghty, 239 F.3d 648,
654 (4th Cir. 2001).  To demonstrate a violation of the Equal
Protection clause, a plaintiff must show more than discriminatory
impact.  See Arlington Heights v. Metropolitan Hous. Dev. Corp.,
429 U.S. 252, 264-65 (1977).  "[A] official act is not
unconstitutional solely because it has a racially
disproportionate impact."  Williams v. Federal Bureau of Prisons
and Parole Comm'n, No. 00-1986, 85 Fed. Appx. 299, 305 (3d. Cir.
2004) (citations omitted).

In this case, Plaintiff does not allege intentional or
purposeful discrimination.  Rather, Plaintiff alleges that

because the majority of the inmates in SHU are black, the classification system adversely affects them.  Because an official act, however, is not unconstitutional solely because it has a racially disproportionate impact, the Court concludes that based upon the foregoing analysis, Plaintiff has failed to state a cause of action upon which relief may be granted.  Accordingly, the Court will dismiss Plaintiff's claim.

In sum, the Court concludes that the claims of constitutional violations contained in Count F have no arguable basis in law or in fact.  Therefore, pursuant to 28 U.S.C. § 1915A(b)(1) and 1915(e)(2)(B)(ii), the Court will dismiss Count F in its entirety and its claims against Defendants Belanger, Cunningham, Counselor Kramer, Zanda, IBCC, Jackson, and Rendina.

## IV.   CONCLUSION

For the reasons discussed above, the Court will dismiss the conditions of confinement claim in Count A brought against Defendants Neal and Jackson; the false disciplinary report (due process) claim in Count A brought against Defendants Moran and Evans; the access to court claim in Count A brought against Defendant Kromka; the failure to protect claim in Count A brought against Defendant Burton; the grievance claim in Count A brought against Defendants Cunningham and Belinger; the general access to the courts (law library) claim in Count C; the excessive force claim in Count D brought against Defendants Stanton and Evans;

-27-

the failure to protect claim in Count D brought against Deputy
Warden McGuigan; the due process claims in Count D brought
against Bureau Chief Howard and Commissioner Taylor; Counts E and
F of the Complaint; and the claims against Defendants Delaware
Center for Justice, Haikal, Havel, Hudson, IBBC, Kramer,
Counselor Kromka, Little,  Merson, Mitchell, Porter, Pringle,
QRT1, QRT2, Rendina, Ryan, Savage, Scarpetti, Seifert, Welcome,
Williams, and Zanda as frivolous and for failure to state a claim
upon which relief may be granted pursuant to 28 U.S.C. §
1915(e)(2)(B) and § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).  The
Court will direct the Clerk's Office to correct the docket sheet
by removing Ms. Hard as a Defendant because she was added in
error.  The Court will enter a Service Order on the remaining
claims.  An appropriate order will be entered.