IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Kevin L. Dickens,
    Plaintiff,

v.

Commissioner Stan Taylor, Bureau Chief Paul Howard, Richard Eugene Seifert, Anthony Rendina, IBCC, John Ryan, Mike Little, Joe Hudson, Ms. Havel, Cpl. Oney, Warden Tom Carroll, Dep. Warden Betty Burris, Dep. Warden McGuigan, Major Cunningham, Capt. Sagers, Capt. Belanger, Staff Lt. B. Williams, Staff Lt. Burton, Lt. Savage, IGC Lise Merson, Sgt. Evans, Sgt. Moran, C/o Harris, Sgt. Tyson, C/o Neal, QRT①, Lt. Stanton, C/o Gardels, Lt. Harvey, Lt. Secord, Lt. Welcome, C/o Rainey, QRT②, Jayme Jackson, Lt. Porter, Cpl. Kromka, Counselor Kromka, Kramer, Zonda, Brian Engram, Ron Drake, Major Holman, First Correctional Medical, Dr. Arronburl, Nurse Brenda Holwerda, Nurse Courtney Doe, Nurse Cindy Doe, Medical Director, Delaware Center for Justice, Shakeerah Huikal, Camille Pringle, Littleton Mitchell, and Frank Scarpetti,
    Defendants

Civil Action No. 04-201-JJF



FILED
DEC 13 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE
BO Scanned

MEMORANDUM OF LAW

2

## III. ANALYSIS

### A. Persons

In its Memorial Opinion, the Court dismissed claims against IBCC, QRT①, QRT②, and Delaware Center for Justice because these Defendants are not "persons." However in "Parties" section of §1983 complaint, Plaintiff identified IBCC, QRT①, and QRT② "as administrators, support services officers, correctional officers, and security supervisors." Plaintiff also identified Delaware Center for Justice "as non-profit contractor with DOC as inmate advocates."

Plaintiff argues that because the Court must construe a pro se complaint liberally, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), IBCC, QRT①, and QRT② are "persons" under liberal application. Furthermore, it is premature for Court to dismiss Defendants before allowing Plaintiff to identify Defendants through Discovery proceedings and Rule 25 Motion for Substitution of Parties. Plaintiff argues that Defendants should remain as Defendants until pro se litigant has been given adequate opportunity to discover Defendants' identities.

Plaintiff argues that Delaware Center for Justice (DCJ) is a "state actor" in the same sense that contractor First Correctional Medical (FCM) is a state actor. It is contracted with the State to do a state function responsible to the State. In FCM's case, it is medical care. In DCJ's case, it certifies grievance procedures of Delaware Department of Corrections, a function that the Attorney General had to certify prior to the adoption of PLRA reform.

Plaintiff argues that as a non-profit private contractor with the State, who ignored or was deliberately indifferent to an inmate's serious allegations of constitutional violations should be held to the same standard as private medical provider. Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998) (private party who conspires with state actors to deprive another of

# III

Constitutional rights acted under color of state law; Flint ex rel. Flint v. Ky. Dept. of Corr., 270 F.3d 340, 351-52 (6th Cir. 2002) (employee of private corporation working in state prison acted under color of state law, because he performed traditional state functions). Plaintiff argues that since DCJ employees worked in state prison and with state employees to perform a traditional state function, namely overseeing and certifying inmate grievance procedure that was traditional function of Attorney General, it was premature for Court to dismiss Delaware Center for Justice and employees Camille Pringle, Shakeerah Haikal, Littleton Mitchell, and Frank Scarpetti from Plaintiff's deliberate indifference claim.

## B. Personal Involvement

After reviewing his complaint, Defendant does not object to Defendants Joe Hudson, Lt. Porter, Ms. Havel, and Counselor Kromka being dismissed as Defendants due to allegations of personal involvement.

## C. Legal Access to Courts and Right to Counsel

Plaintiff notes that the Court failed to address Plaintiff's Sixth Amendment claim of right to effective counsel that was intertwined with his legal access to courts claim. The Court also failed to address Plaintiff's rights as a pro-se defendant in a criminal case as a pretrial detainee. The applicable case to Plaintiff's claim is Benjamin v. Fraser, 264 F.3d 184 (C.A.(2)(2001))

There, the Court stated that "both Procunier and Lewis involve the claims of convicted prisoners; unlike this case, they involve neither Sixth Amendment claims of right to counsel nor pretrial detainees."

Also, it stated that "because law libraries and legal assistance

IV

programs do not represent constitutional rights in and of themselves, but only the means to ensure 'a reasonably adequate opportunity to represent claimed violations of fundamental constitutional rights to the courts,' prisoners must demonstrate 'actual injury' in order to have standing. Lewis, 518 U.S. at 351 ... 'By contrast, where the right at issue is provided directly by the Constitution or federal law, a prisoner has standing to assert that right even if the denial of that right has not produced an 'actual injury.'" Id at 184-185.

As in that case, Plaintiff argues that "prison officials denied him access to legal materials before and during his trial, causing him to be unprepared to present an effective defense, directly violating his right to self-representation. Even though the Court attributed this denial solely to Cpl. Kromka, it is obviously a policy decision by higher officials involving at least the Warden's Office and Security Superintendent. Although Plaintiff does not know exactly which officials set policy of denying Plaintiff legal documents during his trial, the Court should construe pleading liberally and not require a "heightened pleading" standard, when that information can only be learned after discovery. However, it is obvious that Cpl. Kromka was the property officer responsible for withholding Plaintiff's property.

The Court inexplicably states that Cpl. Kromka returned legal property on March 22, 2002, about a month after he was sent to isolation and never addressed the deprivation at his trial as a pro se defendant, denying his right to effective counsel. As stated earlier, this deprivation was attributable to "prison officials" (Plaintiff's Complaint at XXII), quite likely policy decision makers Warden Tom Carroll, Deputy Warden Burris and Security Superintendent Major Holman.

Even though Plaintiff has hybrid claims of both legal access of pretrial detainee and as a convicted inmate, the Court assumed

V

incorrectly that Plaintiff was sentenced during his legal access claim by its statement that "[A]s is well known, persons <u>convicted</u> of serious crimes and confined to penal institutions retain the right of meaningful access to courts." During the initial denial of access to courts, it should be noted that Plaintiff was a <u>convicted</u>, but <u>unsentenced</u> inmate. <u>Fuentes</u> v. <u>Wagner</u>, 206 F.3d 335, 341 (3d Cir. 2000) (convicted but yet unsentenced inmates enjoy liberty interests as pretrial detainees). See Also, <u>Johnson-El</u> v. <u>Schoemehl</u>, 878 F.2d 1041, 1051-53 (8th Cir. 1989)(no deference when officials restricted detainee's right to effective communication with counsel and access to legal materials).

Furthermore, Plaintiff claimed "actual injury" by stating that "he was unable to file timely motion and appeal due to his isolation status and denial of access to courts. [H]e was also unable to file reply brief in his post-conviction relief case." Later, he stated policy of not sending legal mail unless Plaintiff and other inmates were able to purchase stamps. This resulted in Plaintiff and other inmates, many of whom were not allowed or were too indigent to purchase stamps, having their claims denied or unnecessarily delayed. Plaintiff's Complaint at <u>XXV</u>. Clearly, these claims satisfy the Supreme Court's "actual injury" requirement in <u>Lewis</u>.

The Court clearly has misread or misinterpreted Plaintiff's dual claims of <u>legal access to courts</u> and <u>right to counsel</u>. As the Supreme Court has recognized, "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." <u>Maine</u> v. <u>Moulton</u>, 474 U.S. 159, 170 (1985) See Also <u>Wolfish</u> v. <u>Bell</u>, 573 F.2d 118 (2d Cir. 1978)("One of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense."

## VI

All claims against "prison officials" Warden Tom Carroll, Deputy Warden Burris, Major Holman, Brian Engrem, John Ryan, Mike Little, Cpl. Oney, and Cpl. Kromka should be reinstated as their actions and/or policies effectively denied Plaintiff denial of access to courts and assistance of counsel. For purposes of this lawsuit, no "pendogical" interest" applies because Plaintiff was convicted, but unsentenced pretrial detainee during crucial periods.

### D. Eighth Amendment Claims

#### 1. Conditions of Confinement

Even though the Court construed the claim of unsanitary food service and preparation as a condition of confinement claim, the key part of Plaintiff's complaint is that C/O Neal and C/O Jackson acted in retaliation to his complaints about food service. Therefore, this is more appropriately classified as retaliation and failure to protect claims.

Plaintiff realizes that courts are reluctant to grant relief to prisoners for unsanitary food service. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985)("The fact that food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.") Nevertheless, Plaintiff actually made claim that he had suffered an injury, food poisoning, due to hair and unsanitary food service. This is hardly frivolous, considering the public knowledge of E.coli and salmonella food-borne diseases that Court and state officials are aware of, as a result of inspection failures by the Division of Public Health and Center for Disease Control (CDC). It is more disturbing when one considers the lack of adequate medical care that this Court is aware of through public knowledge, creating a dangerous

# VII

a

and unsafe living condition.

Clearly, the unsanitary food service was the initial cause of Plaintiff's complaint. In retaliation, c/o Neal threw hot coffee at Plaintiff. There was then a failure to protect claim due to "cover up" by Captain Belanger and Major Cunningham. This failure to protect later resulted in c/o Neal's brutality against Plaintiff during QRT ① assault. (Plaintiff's Complaint at IX-X). This claim should have been included in the <u>Excessive Force/Failure to Protect</u> claim, along with <u>retaliation</u>. <u>Johnson</u> v. <u>Stovall</u>, 233 F.3d 486, 489 (7th Cir. 2000) ("To state a cause of action for retaliation, a complaint need only allege a chronology of events from which retaliation may be inferred.")

## C. Failure To Protect/Excessive Force

In Plaintiff's complaint, he stated that c/o Harris had just attempted to assault him, after calling him a "snitch" to other inmates. This resulted in Plaintiff picking up an ink pen in self-defense against c/o Harris and c/o Wynder. This was after numerous complaints of physical abuse and verbal threats against Plaintiff.

Furthermore, he stated that "[E]ven though Lt. Welcome had been informed that c/o Harris had been abusing and threatening Plaintiff, he ordered c/o Harris to have contact with Plaintiff by handcuffing him. He then told c/o Harris to write false report of assault against Plaintiff and allowed c/o Harris to continue to abuse, taunt, and bump cart against Plaintiff while he was handcuffed." Even though this may not state a claim of excessive force, there is a due process violation of retaliation and malicious prosecution and failure to protect because Lt. Welcome was aware of the threat that c/o Harris imposed to Plaintiff.

## VIII

In the case of Sgt. Evans, Plaintiff had told prison officials, including Shift Commander S/Lt. Burton that Sgt. Evans had punched him in the nose after he had "filed several grievances and made complaints about food service at least six times." Furthermore, he stated that "[B]ecause officers refused to wear hats, Plaintiff was experiencing food poisoning and nausea." This stated both a condition of confinement claim and excessive force that S/Lt. Burton was aware of. Plaintiff also stated that Sgt. Evans would retaliate against him by ordering staff not to feed him.

Despite knowledge of assault against Plaintiff, S/Lt. Burton ordered Plaintiff back to same housing unit with Sgt. Evans, resulting in Plaintiff's throwing tray and urine at Sgt. Evans. Lt. Stanton and QRT① brutalized Plaintiff as a result of this as medical staff refused and denied him medical treatment. This is a classic case of <u>failure to protect</u> because Shift Commander S/Lt. Burton, who assigns officers to work buildings and transfers inmates to housing units was aware of assault by Sgt. Evans and Plaintiff's potential retaliation <u>before</u> incident resulting in brutal assault by Plaintiff. To add insult to injury, S/Lt. Burton and other prison officials, including IBCC, classified and transferred Plaintiff to Sgt. Evans's unit for a <u>third time</u> after assault by Sgt. Evans, and brutal beating by QRT① and Lt. Stanton.

Again, the Court misread or misinterpreted Plaintiff's complaint and both Lt. Welcome and S/Lt. Burton should remain as Defendants were made aware of Plaintiff's fear for his safety against officers Harris and Evans, yet callously disregarded these threats, which eventually resulted in serious brutal beating of Plaintiff. Furthermore, all "prison officials", including Warden Tom Carroll, Deputy Warden Burris, Deputy Warden McGuigan, Major Cunningham, Capt. Sagers, Lt. Harvey, and Capt. Belanger, Richard Seifert, Anthony Rendina, and Paul Howard should be

<u>IX</u>

held accountable for failure to protect because these officials were made aware of Plaintiff's cruel and unusual treatment and lack of protection by due process and callously disregarded it.

D. <u>Medical Claim</u>

There was no medical claim against Ms. Camille Pringle. It was a due process claim of deliberate indifference because Ms. Pringle, and other Delaware Center for Justice employees and officers failed to hold prison officials accountable for cruel mistreatment and unsafe conditions that they were aware that prison officials were in violation of.

E. <u>DUE PROCESS / DISCIPLINARY PROCEDURE</u>

The Court has misread or misinterpreted Plaintiff's Complaint. Plaintiff made claim of due process violations and retaliation and deliberate indifference claims. Basically, Plaintiff has claimed that Sgt. Teddy Tyson, Sgt. Moran, and Sgt. Evans filed false disciplinary reports out of retaliation for his numerous grievances and complaints against them and that prison disciplinary procedure did not afford him due process, and showed deliberate indifference to Plaintiff's serious allegations to threats to his health and safety.

Again, the Court has relied on <u>Wolff</u>, <u>Sandin</u>, <u>Hewitt</u>, and <u>Turner</u> to state that Defendants did not violate Plaintiff's due process rights. These cases, however, involve due process of <u>sentenced</u> inmates. Although some of Plaintiff's claims fall under Eighth Amendment because he was convicted and sentenced inmate at time of complaints, the Court unfairly used a "broad brush" to dismiss all claims, especially when Plaintiff indicated that he was a pre-

X

trial detainee during initial complaints and isolation periods, resulting in Fourteenth Amendment due process claims.

Even for sentenced portion of his complaints, Plaintiff has submitted that officers' actions were retaliatory against him for filing grievances and complaints against the Defendants. In <u>Allah</u> v. <u>Seiverling</u>, 229 F.3d 220 (C.A. 3(Pa) 2000), the Court ruled that <u>Sandin</u> does not "preclude Allah's claim alleging that he was kept in administrative segregation in <u>retaliation</u> for filing civil rights suits against prison officials." Id at 224. The Court concluded that retaliation may be actionable, even when the retaliatory action does not involve a liberty interest.

Lastly, Plaintiff has alleged that "he was repeatedly denied witnesses and right to confrontation". And "he was not given copies of disciplinary charges before hearings on several occasions and was unaware of several charges," Plaintiff's Complaint at XXIX. These claims show clearly that Plaintiff did not receive requisite due process accorded in <u>Wolff</u> because he did not receive (1) written notice of charges and opportunity to call witnesses and evidence in his defense. The Court should not assume at this stage that prison officials had legitimate penological interests to deny Plaintiff his due process rights.

Because Plaintiff has clearly stated that he did not receive requisite due process accorded in <u>Wolff</u> by not receiving written notice of charges and opportunity to call witnesses and his complaints are based on retaliation by prison officials for filing grievances and complaints, he should not be required to show that the violations "are atypical to ordinary incidents of prison life." <u>Sandin</u>

Furthermore, the Court stated that appeals of disciplinary procedure were not required in <u>Wolff</u>. However, in <u>Dyson</u> v. <u>Kocik</u>, 564 F.Supp. 109, 120 (M.D. 1983) aff'd 740 F.2d 956 (3d Cir.) (requirement that appeal process is followed), clearly states that appeal process must be followed. Also, the

<u>XI</u>

officials reviewing appeals are not immune. <u>Lewis</u> v. <u>Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988)(officer reviewing appeals was not immune from damages liability). Also, this Court has found a due process violation for pre-trial detainees who are punished before a hearing in the same manner as Plaintiff. <u>Fritz</u> v. <u>Dixon</u> (Cite Unavailable) U.S. Dist. Ct. (Del)

For the preceding arguments and claims, the Court should reinstate claims of due process violations for retaliation and deliberate indifference against <u>all</u> Defendants, namely, S/Lt. Williams, Lt. Savage, Sgt. Moran, Sgt. Evans Anthony Rendina, Paul Howard, and Commissioner Taylor.

F. <u>GRIEVANCE PROCEDURE/DELIBERATE INDIFFERENCE</u>

In Plaintiff's Complaint, he stated that c/o Neal threw hot coffee at him, but it did not hit him. The Court concluded that this did not "state a constitutional claim since the coffee missed Plaintiff and there is no indication that he was harmed as a result of the coffee throwing incident."

Once again, the Court has either misread or misinterpreted the Complaint. Plaintiff clearly stated that "[I]n retaliation (for grievances), C/o Neal threw hot coffee in cell at Plaintiff. Fortunately, Plaintiff was not struck by this incident, but he filed grievance where <u>he</u> (Plaintiff) told prison officials that he would try to kill officer if this officer ever threw hot coffee on him. To this grievance, Capt. Belanger and Major Cunningham "covered up" c/o Neal's actions by reenacting a false scenario, where they pretended that coffee had accidentally spilled from tray." Plaintiff's Complaint at <u>III</u>.

The Court seems to reason that an "attempted" assault is not an assault, even when it is done in retaliation. Divine providence that does not result in serious physical injury should never excuse an assailant.

Similarly, an "attempted" crime generally results in the same criminal charge as the crime itself, whether it be robbery, rape or murder. Plaintiff fails to follow logic of court that excuses a "fortunate" outcome to Plaintiff, in the same way a person shot at would not allow his assailant to escape prosecution because he missed.

Plaintiff also takes exception that there is no indication that Plaintiff was harmed by the incident. When the complaint is <u>liberally construed</u> with <u>required inferences</u> that the Court must adhere to, it is certainly reasonable that Plaintiff suffered major psychological damage because Plaintiff wrote grievance to his supervisors, which stated unequivocally that "he (Plaintiff) would kill officer (Neal) if he ever threw hot coffee on him." A traumatic event that causes a prisoner to entertain thoughts of homicide, hostility and hatred certainly cannot be excused as harmless by a court of law. The Court is reminded that this was an attempted <u>act</u>, as opposed to a mere verbal threat, that caused Plaintiff's psychological and emotional trauma. <u>Chandler v. D.C. Dept. of Corr.</u>, 145 F.3d 1355, 1359-61 (D.C. Cir. 1998)("Psychological damage" and nightmares after guard allegedly threatened to have inmate killed).

The Court seems to construe the "Grievance Procedure" topic heading as a claim of due process. It is more appropriately a claim of deliberate indifference to Plaintiff's many grievances of serious constitutional violations. It is also meant to show compliance of PLRA "exhaustion requirement of administrative remedies" required by law. In all cases, Plaintiff followed proper procedures in making administrative officials including Warden's Office, Bureau Chief, and Commissioner aware of his mistreatment by staff.

In <u>Chambers v. Colo. Dept. of Corr.</u>, 205 F.3d 1237, 1242 (10th Cir. 2000), that Court stated that "due process protections apply only when prisoner is deprived of life, liberty, or property." It is clear that Plaintiff had a liberty

XIII

interest in not being punished for exercising his First Amendment right to free speech. The appropriate forum and administrative remedy was the Inmate Grievance Procedure, which established certains rules and regulations to be followed. It is an oxymoron for federal courts to require prisoners to exhaust administrative remedies and follow the available procedures, and not hold prison officials liable when they do not follow the procedure that they have implemented.

In the prison context, the available administrative remedies are the Disciplinary, Classification, and Grievance Procedures. These procedures have set rules and regulations that provide procedural due process, including appeals. Because Plaintiff has made a claim based on deliberate indifference by prison officials, he was required to put the appropriate administrators on notice about a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825 (1994). This was done mainly through the Grievance Procedure. Curry v. Scott, 249 F.3d 493, 508 (6th Cir. 2001) (large number of complaints and grievances put supervisors on notice that guard posed risk to African-American inmates); Delaney v. DeTella, 256 F.3d 679, 686 (7th Cir. 2001) (deliberate indifference established where defendants did nothing after inmate filed grievance and requested medical attention for injuries caused by denial of out-of-cell exercise).

Because Plaintiff complied with the procedural guidelines of prison administrative remedies and followed federal law requirement of PLRA in putting prison officials on notice about his serious allegations of harm to his constitutional rights, he has satisfied the claim of deliberate indifference, regardless of whether grievance procedure is inadequate or follows due process. At this stage of proceedings where Court is required to construe pro se complaints liberally and to accept all of Plaintiff's allegations as true, it is too premature for the Court to dismiss his claim of

deliberate indifference.

For that reason, all prison officials that received, heard, or knew about Plaintiff's grievances and complaints should be reinstated, namely, Major Cunningham, Captain Belanger, Mike Little, John Ryan, Deputy Warden Burris, Richard Seifert, Cpl. Merson, Delaware Center for Justice, Shakeerah Haikal, Camille Pringle, Littleton Mitchell, Frank Scarpetti, and FCM for deliberate indifference.

### CLASSIFICATION/PRIVILEGES/DISCRIMINATION

The Court again assumes that Plaintiff was a sentenced inmate and the restrictions of Hewitt and Sandin apply because "the restraints did not "create an atypical and significant hardship in relation to ordinary incidents of prison life." Again, Plaintiff will note that his initial classification was as an *unsentenced* pre-trial detainee, so those cases do not apply to Plaintiff's due process challenge, especially one that is intertwined in retaliation. Benjamin v. Fraser, 264 F.3d 175, 188-89 (2d Cir. 2001)(Sandin analysis not applicable to pretrial detainees); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000)(same); See Also, Allah v. Seiverling ("Sandin does not preclude Allah's claim that he was kept in administrative segregation in retaliation for filing civil rights suits against prison officials"). 229 F.3d at 224 (3d Cir. 2000).

Even as a sentenced inmate, Plaintiff alleges that SHU staff imposed atypical hardship based on his claims of lack of fresh drinking water, denial of exercise and unsanitary conditions that caused substantial deterioration to his health. Plaintiff earlier stated in lack of adequate medical claim that he only received "two hours and fifteen minutes of exercise per week or an average of nineteen minutes per day." This has caused complications to Plaintiff's health as he has experienced heart and chest pains and shortness of breath. Because Plaintiff has a high risk of diabetes due to family history,

XV

the lack of exercise is causing anxiety and stress due to health symptoms." Plaintiff's Complaint at XIII-XIV. <u>Bass</u> v. <u>Perrin</u>, 170 F.3d 1312, 1318 (11th Cir. 1999) (depriving prisoner in solitary confinement of 2 hours a week of yard time imposes atypical and significant hardship).

The Court seemed to trivialize Plaintiff's drinking water complaint by saying that Plaintiff received chlorinated water. What Plaintiff actually stated in complaint is that he received "chlorinated toilet water." To favorably compare fresh drinking water to chlorinated toilet water is in itself cruel and unusual, especially when Plaintiff complains that Artesian Water Company has had to be called to SHU because of contaminated water supply.

Neither does the lack of television privileges close a due process claim, when it is based on retaliation and discrimination. <u>Hines</u> v. <u>Gomez</u>, 108 F.3d 265, 269 (9th Cir. 1997) (alleged retaliatory punishment of ten-day confinement in segregation and loss of television privileges, "prisoners may still base retaliatory claims on harms that would not raise due process concerns). In Plaintiff's Complaint, actions by Major Cunningham, Capt. Belanger, Counselors Kramer and Zanda were done in both retaliatory and discriminatory manner because Plaintiff was "singled out" and rules were changed specifically to deny him television privileges.

In like manner, the generic cereal was imposed as punishment for Plaintiff and other similarly situated inmates in SHU in order to have SHU inmates eat inferior nutritional product. Plaintiff admits that generic cereal claim is "reaching", however, he still maintains that having to eat stale generic cereal as retaliatory and discriminatory punishment violates due process. <u>Hines</u> v. <u>Gomez</u>, Ibid.

Furthermore, the duration of administrative and disciplinary segregation in SHU Housing Unit has triggered a liberty interest. Plaintiff has stated that he was placed in SHU in March, 2002, over two years from filing of suit. Earlier, the Court stated that 15 month administrative segregation did not impose an atypical and significant hardship on the prisoner. Griffin v. Vaughn, 112 F.3d at 706-09. (Court's Memorandum Opinion at 19). The Court further stated that since stints of isolation did not involve more than two months, there was no liberty interest. However, Plaintiff, at time of filing, had been in SHU Housing Unit maximum security for over two years, with no prospect of immediate release. Colon v. Howard, 215 F.3d 227, 231-32 (2d Cir. 2000) (confinement for 305 days in standard administrative segregation conditions is atypical and significant hardship); Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (8 years in administrative segregation with no prospect of immediate release is atypical and significant hardship).

  The Court also seemed to disparage Plaintiff's claim of racial discrimination by stating that "an official act is not unconstitutional because it has a racially disproportionate impact." Court's Memorandum Opinion at 27. It further states that there is no showing of intentional or purposeful discrimination. What the Court failed to consider is the impact of <u>similarly situated prisoners</u>. Furthermore, Plaintiff's allegations are that classification is unfair and arbitrary and based on favoritism. Despite the federal courts' virtual bar to equal protection claims based on race, when an arbitrary policy discriminates against similarly situated inmates, there is an equal protection violation. The racial disparate impact is merely the evidence of the discrimination. Yates v. Stalder, 217 F.3d 332, 335 (5th Cir. 2000) (claims by female inmates of discrimination improperly dismissed because whether male and female inmates are <u>similarly situated</u> is question of fact.).

## XVII

For the foregoing reasons, all claims of due process in classification, retalialiation, loss of privileges, and discrimination should be reinstated against Major Cunningham, Capt. Belanger, Counselors Kramer and Zanda, IBCC, Jayme Jackson, and Anthony Rendina.

December 3, 2006
Date

Kevin L. Dickens
Kevin L. Dickens, Pro Se
DCC - SHU 18CU5
Smyrna, DE 19977

I/M Kevin L. Dickens
SBI# 256265   UNIT SHU 18CU5
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

US POSTAGE $00.63 DEC 12 2006
MAILED FROM ZIP CODE 19977

U.S.M.S. LEGAL MAIL X-RAY

Office of the Clerk
United States District Court
844 N. King Street, Lock box 18
Wilmington, DE 19801-3570