IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEVIN L. DICKENS,                          :
                                           :
          Plaintiff,                       :
                                           :
     v.                                    : Civil Action No. 04-201-JJF
                                           :
COMMISSIONER STANLEY TAYLOR,               :
et al.,                                    :
                                           :
          Defendants.                      :

---

Kimberly E.C. Lawson, Esquire and Kathleen A. Murphy, Esquire of
Reed Smith LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Catherine Damavandi, Esquire of the Delaware Department of
Justice, Wilmington, Delaware.

Attorneys for Defendants.

---

**MEMORANDUM OPINION**

November 24, 2009
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court are Defendants' Motions for Summary Judgment. (D.I. 144, 149.) State Defendants Tyson, Burris, Holman, Taylor, Howard, Engrem,[1] Kromka, Oney, and Jackson, (collectively "Tyson Defendants") filed a Motion For Summary Judgment. (D.I. 144.) Additionally, State Defendants Evans, Secord, Sagers, Stanton, Harvey, Rainey, Gardels, Carroll, Cunningham, Burton, Belanger, and Drake, (collectively "Evans Defendants") filed a Motion For Summary Judgment as well. (D.I. 149.) Plaintiff Kevin L. Dickens opposes both Motions. (D.I. 158, 159.) A pre-trial conference for this case is scheduled for December 10, 2009.

## I. BACKGROUND

Plaintiff Dickens is an inmate incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware. (D.I. 150 at iii.) Plaintiff, who initiated this matter on March 4, 2004, as a pro se plaintiff, was appointed counsel on August 1, 2008. (D.I. 90.) The case originated with a large number of Defendants and has since been reduced significantly. The two Motions for Summary Judgment before the Court were filed by State Defendants

---

[1]Defendant Engrem's name has been spelled both "Engrem" and "Engram" over the course of the proceedings. It is spelled with an "e" by his counsel, thus the Court has spelled it consistently with Defendant Engrem's counsel.

on September 18 and 24, 2009.

This case is based on numerous allegations of misconduct by prison officials made by Plaintiff. The alleged incidents include multiple instances of assault, denying Plaintiff meals, denying Plaintiff access to the courts, and thwarting the grievance process of the prison. (See generally D.I. 159 at 5-6.) Defendants counter that Plaintiff has had many behavior problems while in prison including regular incidents of throwing urine, feces, and food trays at staff members. (D.I. 150 at v.) Plaintiff has been convicted of assault in a detention facility for multiple instances of throwing feces. (D.I. 151 Ex. 2.) Because of Plaintiff's actions while in prison, he is housed in the Security Housing Unit ("SHU") and has been placed in isolation several times. (D.I. 150 at v-vi.)

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there are triable issues of material fact, a court must

review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person would conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)(internal citations omitted).

The movant bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). Once the movant offers such proof, the non-movant "must come forward with 'specific facts showing [a] genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the non-movant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, in ruling on a summary judgment motion, the court must perform the "threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

4

**III. DISCUSSION**

   **A. Tyson Defendants' Motion For Summary Judgment**

      **1. Defendants' Argument That Claims Against Defendants**
      **Tyson, Burris, and Holman are Time Barred by the**
      **Statute of Limitations**

   Defendants argue that the claims against Defendants Tyson,
Burris, and Holman are time barred by the statute of limitations.
(D.I. 145 at 1.)  The relevant claims are the Count A claims
against Defendants Tyson, Burris, and Holman, for conditions of
confinement and the Count D claim against Defendant Tyson for
retaliation.

   This case arises from 42 U.S.C. § 1983 claims made by
Plaintiff.  Accordingly, the applicable statute of limitations is
the personal injury statute of limitations from the proper state,
Delaware in this case.  Owens v. Okure, 488 U.S. 235, 241 (1989).
It is well established that the statute of limitations for
personal injury in Delaware is two years.  10 Del. C. § 8119
(2009); see also McDowell v. Delaware State Police, 88 F.3d 188,
191 (3d Cir. 1996)(applying the Delaware statute of limitations
in a § 1983 cause of action); Gibbs v. Deckers, 234 F. Supp. 2d
458, 461 (D. Del. 2002).

   The two-year statute of limitations begins to run when the
plaintiff should have known about the injury in question.  Moody
v. Kearney, 380 F. Supp. 2d 393, 397 (D. Del. 2005)(internal
citation omitted).  However, the statute of limitations can be

equitably tolled in very limited circumstances. Such tolling was recently addressed:

> Despite the fact that the Delaware statute of limitations applies, federal tolling doctrine may be applicable to determine whether plaintiff's federal claims are timely. The federal doctrine of equitable tolling stops the statute of limitations from running when the date on which the claim accrued has already passed. This doctrine, however, can only be applied to suits brought under federal civil rights statutes when the state statute of limitations would otherwise frustrate federal policy. Although the Supreme Court has repeatedly recognized the equitable tolling doctrine, it also has cautioned that it should be invoked sparingly.

Id. (internal citation and quotation omitted). In defining the situations when equitable tolling can be used, the Third Circuit provided three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to [the] cause of action; (2) where the plaintiff has been prevented from asserting [the] claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts [the] claims in a timely manner but has done so in the wrong forum.

Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).

## A. Count A Claims

With regard to the claims in Count A, which relate to an incident that took place on February 2, 2002, Plaintiff concedes that the claims are barred by the statute of limitations. Thus, the Court will grant Tyson Defendants Motion For Summary Judgment (D.I. 144) in regard to the Count A claims against Defendants Tyson, Burris, and Holman.

## B. Count D Claim

The event in question occurred on February 22, 2002.

Plaintiff alleges that Defendant Tyson retaliated against
Plaintiff in relation to the February 15, 2002 incident. On
February 22, 2002, Plaintiff was talking with another inmate and
called Defendant Tyson a "clown." (D.I. 146 Ex. 7, D00062 at
5:8-19.) When Defendant Tyson attempted to handcuff Plaintiff,
Plaintiff resisted. (Id.) After backup arrived and Plaintiff
was restrained he was taken to isolation in the SHU. (Id. at
D00033-34.) Plaintiff contends that he was denied access to the
grievance process during this time in isolation. (D.I. 158 at
6.)

Defendants argue that the Count D claim against Defendant
Tyson alleging retaliation regarding the February 22, 2002,
incident should be dismissed as barred by the statute of
limitations and because Plaintiff has not alleged any
Constitutional violation. (D.I. 145 at 3.) Plaintiff counters
that there is a genuine issue of material fact both because the
statute of limitations should be equitably tolled and because
there is a material question as to whether there was a
retaliation. (D.I. 158 at 8.)

The Court first addresses the statute of limitations,
specifically whether the statute of limitations should be
equitably tolled. One scenario in which equitable tolling is
appropriate is where the plaintiff has been prevented from
asserting the claim as a result of other extraordinary

7

circumstances. Lake, 232 F.3d at 370. The Court previously found there to be extraordinary circumstances when a plaintiff suffered brain damage, and tolled the statute of limitations until plaintiff obtained counsel. Moody, 380 F. Supp. 2d at 397-98. In contrast, the Court found that tolling was not appropriate when an inmate claimed that a long history of court ordered psychotropic medication prevented him from recognizing his claim because he had clearly had cognitive abilities for years while on the medication. Gillis v. Taylor, 626 F. Supp. 2d 462, 467 (D. Del. 2009). Plaintiff's claim that he was denied access to file grievances while in isolation is serious and if the Court were to equitably toll the statute of limitations for that period of isolation, the claim would not be time barred. In the Court's view, the evidence presented indicates that there is a remaining question of material fact as to whether Plaintiff was denied access to the grievance system while in isolation based on Plaintiff Dickens' deposition testimony. Because the evidence presented by both sides is contrasting testimony that must be viewed in the light most favorable to Plaintiff, the Court concludes that it is possible that a jury could find that Plaintiff was denied access to the grievance process. The denial of access to legal materials is comparable to mental incapacity because it prevents the process from starting. Thus, if it is found that Plaintiff was denied access to legal materials while

8

in isolation, there is the potential to conclude that there was
an extraordinary circumstance justifying equitable tolling of the
statute of limitations.

The second component of the Motion for Summary Judgment
regarding Count D's claim against Defendant Tyson is retaliation.
The standard for a retaliation claim was recently stated by this
court:

> In order to prevail on a claim for retaliation in violation of
> First Amendment rights, a plaintiff must prove "(1)
> constitutionally protected conduct, (2) an adverse action by
> prison officials sufficient to deter a person of ordinary
> firmness from exercising his constitutional rights, and (3) a
> causal link between the exercise of his constitutional rights
> and the adverse action taken against him."

Bacon v. Taylor, 414 F. Supp. 2d 475, 481 (D. Del. 2006)(quoting
Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)).

Defendants argue that Plaintiff has failed to show that
Constitutionally protected activity was violated. (D.I. 145 at
3.) Plaintiff contends that the incident was a direct result of
his talking with another inmate and thus it invokes his freedom
of speech. (D.I. 158 at 11.)

The Court concludes that issues of material fact remain
regarding the issue of retaliation. Although there are
limitations upon the free speech rights of prisoners, Defendants
have failed to meet the burden of establishing that there is no
question of material fact relating to whether protected speech
activity led to retaliation. Defendants have not established that

9

the speech that took place in this incident was not

Constitutionally protected, showing no prison policies or

regulations on speech nor testimony from Defendants that the

actions taken were to promote penological interests. Because

Defendants did not meet the summary judgment standard for the

first prong of the retaliation standard, questions of material

fact remain on the second two prongs because they incorporate the

evaluation of whether the action was a constitutional right.

In sum, the Court concludes that Tyson Defendants Motion For

Summary Judgment in relation to the retaliation claim against

Defendant Tyson in Claim D will be denied because genuine issues

concerning material facts remain regarding the equitable tolling

of the statute of limitations and whether retaliation occurred.

> **2. Defendants' Contention that Plaintiff's Inability to Demonstrate Denial of Access to Courts Warrants Dismissal of His Claims Against Stanley Taylor, Brian Engrem, Cpl. Kromka and Cpl. Oney**

This portion of the Motion relates to Count C of the

complaint which deals with denial of access to courts.

Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. . . . Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury" -- that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy."

Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) (internal
citation omitted).

In this case, Plaintiff has made four claims of denial of
access to the courts, against Defendants Taylor, Oney, Engrem,
and Kromka. The claim against Defendants Taylor and Oney relates
to the procedure for mailing legal documents, the claim against
Defendant Engrem relates to the responses from the prison's law
library, and the claim against Defendant Kromka relates to the
denial of access to legal materials.

### a. Statute of Limitations and Claim Preclusion

Defendants make two contentions. Defendants argue that the
claims from February and March of 2002 must be denied because
they are barred by claim preclusion as they were decided by the
Delaware Superior Court in 2003 and because they are time barred
by the statute of limitations. (D.I. 145 at 5.) Additionally,
Defendants assert that the claims from August 2003 are barred by
doctrine of claim preclusion because the issue was addressed by
the Delaware Supreme Court in 2004. (D.I. 145 at 6.) Plaintiff
does not address these issues.

In evaluating claim preclusion federal courts "are required
by 28 U.S.C. § 1738 to give full faith and credit to the state
judgment and, in section 1983 cases, apply the same preclusion
rules as would the courts of that state." Edmundson v. Borough
of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993). "Delaware

11

subscribes to the modern transactional view of claim preclusion."

Lloyd v. Jefferson, 53 F. Supp. 2d 643, 686 (D. Del.

1999)(quoting Meding v. Hurd, 607 F. Supp. 1088, 1096 (D. Del.

1985)).

> The modern transactional view of the doctrine of res judicata,
> however, does not require that the claim subsequently asserted
> be based on a same cause of action to be barred, but permits
> the doctrine to be invoked to bar litigation between the same
> parties if the claims in the later litigation arose from the
> same transaction that formed the basis of the prior
> adjudication.

Maldanado v. Flynn, 417 A.2d 378, 381 (Del. Ch. 1980).

Based on this standard, the Court concludes that the

allegations of denial of access to the courts from February to

March of 2002 and August of 2003 are barred due to claim

preclusion. The claims regarding access to the courts from

February to March of 2002 were determined to be without validity

by the Delaware Superior Court because Plaintiff "was always

granted access to his materials while in court, and during the

course of the proceedings." Dickens v. State, No. 0112001247,

2003 Del. Super. LEXIS 292, *15 (Del. Super. Ct. July 11, 2003).

Similarly, the Delaware Supreme Court rejected the claim that

Plaintiff was denied access to the courts by Defendants in August

2003. Dickens v. State, No. 498, 2003, 2004 Del. LEXIS 282, *4

(Del. June 25, 2004). That decision stated:

> Dickens' claim that prison officials prevented him from filing
> a timely notice of appeal on or before August 15, 2003, is not
> persuasive. His contention is belied by the fact that he filed
> his motion for reargument in the Superior Court on August 7,

2003, during the period of time in which he claims that he was
denied access to the courts.

Id. For these reasons the Court will grant Tyson Defendants'
Motion For Summary Judgment in relation to the access to court
claims relating to the February 2002 through March 2002 and
August 2003 time periods. As such, the statute of limitations
argument will not be addressed.

### b. Access to the Courts and Defendants Taylor and Oney

Plaintiff alleges that Defendants Taylor and Oney denied him
access to the courts because of a policy instituted in January
2004, the refusal to mail legal documents without proper paid
postage. Defendants argue that Commissioner Stanley Taylor did
not violate any rights of Plaintiff by this policy requiring paid
postage because legal mail of inmates was never turned down, and
was instead mailed on credit. (D.I. 145 at 7.) Additionally,
Defendants contend that this argument is furthered because
Plaintiff is unable to point to any legal filings that were late
because of this policy and the fact that Plaintiff successfully
mailed legal documents at this time. (Id.) Defendant Oney is
cited as the officer in charge of mailing said legal documents.
Defendants argue that the prison followed this policy and thus
any claim against him should be dismissed. Plaintiff counters
that there is a genuine issue of material fact regarding his
"access to courts" claim against Defendants Taylor and Oney

because the evidence presented by Defendants refers only to successful mailings and does not refer to the legal mailings that were rejected. Also, Plaintiff asserts that he was denied a chance to mail a legal document on credit. (D.I. 158 at 12.) Lastly, Defendants contend that the policy has already been reviewed by state courts. (D.I. 163 at 4-5.)

Although evidence of successful mailings under the mailing policy for legal mail and the ability to pay for those mailings is strong evidence, it does not eliminate any questions as to whether other mailings were improperly denied as is asserted by Plaintiff in his testimony. There is a substantial difference between Plaintiff's deposition and the evidence offered by Defendants. Therefore, the issue requires review by the finder of fact.

Thus, the Court will deny the Tyson Defendants' Motion For Summary Judgment in relation to the postage policy and Defendants Taylor and Oney as they relate to Count C.

### c. Access to the Courts and Defendant Engrem

Defendant Engrem is a paralegal and runs the prison law library. Plaintiff alleged that Defendant Engrem caused Plaintiff's legal requests to be delayed substantially more time than the time required by other inmates from October 2002 to October 2003 resulting in Plaintiff's denial of access to the courts claim. (D.I. 2.) Plaintiff contends that Defendant

14

Engrem caused substantial delays in the time it took for Plaintiff's legal research and materials requests to be fulfilled when previous requests had shown that such a delay was unnecessary. Plaintiff points to the Law Library Request Log (D.I. 146 Ex. 6) which documented the length of time it took to process each of Plaintiff's legal requests. Defendants argue that Defendant Engrem did not violate Plaintiff's right of access to courts because Engrem acted properly and promptly in his work for Plaintiff. (D.I. 145 at 9.)

For an inmate to successfully claim denial of access to the courts he must show that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996)("He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."). Thus, an inmate must show both a violation or shortcoming in the library and a harm caused by that.

Here, Plaintiff argues that the disparity of time it took for him to get a response from Defendant Engrem to a legal

request shows a fault in the library system. Plaintiff argues that because the average time to receive a reply increased from one to two days to multiple days his rights were violated. There is a clear factual dispute regarding the functions of the law library.

Second, Plaintiff contends that actual harm was expressed both in his complaint and his deposition testimony where he stated that the delays caused by Defendant Engrem caused him to be unable to adequately represent himself, timely appeal his conviction, or file a reply brief in his post conviction proceedings. (D.I. 158 at 15.) Defendants argue that no material question of fact remains because Plaintiff has not pointed to a specific instance of harm done because he has not given any court deadlines impacted by delayed legal research. (D.I. 145 at 9.)

In the Court's view, Plaintiff's inability to state a specific incident of harm is dispository. By merely stating that harm occurred and not pointing to specific instances of harm, Plaintiff fails to show a genuine issue for trial. Even when looked at in the light most favorable to Plaintiff, the Court does not see evidence that would allow a jury to find any specific instances of harm. Thus, the Court will grant Tyson Defendants' Motion for Summary Judgment in relation to Count C's claim of access to courts against Defendant Engrem.

### d. Access to Courts and Defendant Kromka

This claim stems from Plaintiff's allegation that while in isolation in March of 2002 and August of 2003 Defendant Kromka and property officers lost or discarded Plaintiff's legal materials. (D.I. 2.) As discussed above, these incidents were evaluated by the Delaware state courts. As such, they are barred through claim preclusion.

Thus, the Court will grant Tyson Defendants' Motion For Summary Judgment in regard to the Count C claim of access to courts against Defendant Kromka.

### 3. Defendants' Assertion that Plaintiff Has Not Alleged an Excessive Force Claim Against Jayme Jackson

Plaintiff concedes that he does not have any claims against Defendant Jackson. Therefore, the Court will grant Tyson Defendants' Motion for Summary Judgment with respect to Defendant Jackson and Count A.

### 4. Defendants' Assertion that Defendants Taylor and Howard Must Be Awarded A Judgment As A Matter Of Law

This portion of the Motion for Summary Judgment relates to Count B's conditions of confinement claims made against Defendants Taylor and Howard. The claims are § 1983 claims which allege a civil rights violation due to the conditions of confinement.

Defendants contend that there is no actionable claim presented against Defendants Taylor and Howard in Count B because

17

the claims alleged are § 1983 claims, and those claims require personal involvement, which is not shown here by Plaintiff. (D.I. 145 at 11-12.) Plaintiff argues that Defendant Howard was well aware of the conditions complained of, and that Defendant Howard failed to act as required by his position. (D.I. 158 at 18.) Plaintiff did not address Defendant Taylor in this discussion.

Under 42 U.S.C. § 1983, an "action requires that (1) the conduct complained of must be committed by a person acting under color of state law and, (2) it must have deprived the plaintiff of a right or privilege secured by the Constitution or law of the United States." Riley v. Jeffes, 777 F.2d 143, 145 (3d Cir. 1985)(citing Parratt v. Taylor, 451 U.S. 527 (1981)); see also House v. New Castle County, 824 F. Supp. 477 (D. Del. 1993). Also, Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988), provides that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."

The Court concludes that in regard to Defendant Taylor and Count B, there is no question of material fact. Plaintiff has failed to provide any evidence that Defendant Taylor had any personal involvement with the conditions of confinement claims. In fact, Plaintiff has not even addressed Defendant Taylor in his response brief. (D.I. 158.) Thus, in relation to the conditions

18

of confinement claim in Count B against Defendant Taylor, the Court will grant the Motion for Summary Judgment.

The Court concludes that summary judgment regarding conditions of confinement is not supported for Defendant Howard. Plaintiff has asserted that he contacted Defendant Howard on numerous occasions regarding the conditions of his confinement and that Defendant Howard did not remedy the problems. (D.I. 158 at 18.) A failure to remedy problems could be viewed as personal involvement with the situation when the evidence is viewed in the light most favorable to Plaintiff. Because of this limited evidence, summary judgment is inappropriate. Thus, in relation to the conditions of confinement claim in Count B against Defendant Howard, the Court will deny the Motion for Summary Judgment.

### 5. Summary of Tyson Defendants' Motion For Summary Judgment

1. Defendants' Argument That Claims Against Defendants Tyson, Burris, and Holman are Time Barred by the Statute of Limitations:

- The Court will **grant** Tyson Defendants Motion For Summary Judgment in regards to the Count A claims against Defendants Tyson, Burris, and Holman.

- The Court will **deny** the Tyson Defendants Motion For Summary Judgment in relation to the retaliation claim against Defendant Tyson in Claim D.

2. Defendants' Contention that Plaintiff's Inability to

Demonstrate Denial of Access to Courts Warrants Dismissal of His Claims Against Stanley Taylor, Brian Engrem, Cpl. Kromka and Cpl. Oney:

- The Court will **grant** Tyson Defendants' Motion For Summary Judgment in relation to the access to court claims relating to the February 2002-March 2002 and August 2003 time periods.

- The Court will **deny** the Tyson Defendants' Motion For Summary Judgment in relation to the postage policy and Defendants Taylor and Oney as they relate to Count C.

- The Court will **grant** Tyson Defendants' Motion for Summary Judgment in relation to Count C's claim of access to courts against Defendant Engrem.

- The Court will **grant** Tyson Defendants' Motion For Summary Judgment in regard to the Count C claim of access to courts against Defendant Kromka.

3. Defendants' Assertion that Plaintiff Has Not Alleged an Excessive Force Claim Against Jayme Jackson:

- The Court will **grant** Tyson Defendants' Motion for Summary Judgment with respect to Defendant Jackson and Count A.

4. Defendants' Assertion that Defendants Taylor and Howard Must Be Awarded A Judgment As A Matter Of Law:

- In relation to the conditions of confinement claim in Count B against Defendant Taylor, the Court will **grant** the

Motion for Summary Judgment.

- In relation to the conditions of confinement claim in Count B against Defendant Howard, the Court will **deny** the Motion for Summary Judgment.

**B. Evans Defendants' Motion for Summary Judgment**

> **1. Defendant's Assertion That Plaintiff's Failure to Protect Claims in Counts A and D Must Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted**

This portion of the Motion for Summary Judgment relates to the Failure to Protect claims in Counts A and D. Defendants contend that Plaintiff's Failure to Protect claims in Counts A and D should be dismissed because Plaintiff has not shown that he was subject to harm at the hands of the correctional staff. (D.I. 163 at 10.) Additionally, Defendants argue that the only risk of harm in the interactions between Plaintiff and correctional officers was to the correctional officers from Plaintiff. (D.I. 150 at 1-2.) Defendants also argue that the grievances in question were properly investigated by Defendant Drake. (Id.) In response, Plaintiff contends that there are issues of material fact in relation to the claims of failure to protect because prison officials knew of and disregarded a risk to Plaintiff from correctional officers. (D.I. 159 at 6-8.)

To establish a failure to protect claim a plaintiff must show that "he is incarcerated under conditions posing a

substantial risk of serious harm" and that prison officials had a state of mind of being "deliberate[ly] indifferent to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994)(internal citation omitted). Although the vast majority of failure to protect cases deal with a correctional officer showing deliberate indifference to a known harm from another inmate, the standard applies to a similar showing of indifference to a known harm to an inmate from a correctional officer. The deliberate indifference standard has been applied to known harm from a prison official by several circuits. See Curry v. Scott, 249 F.3d 493, 506 n.5 (6th Cir. 2001)(overruled on other grounds)("Prison officials are held liable for exposing prisoners to excessive force at the hands of prison employees under the same 'deliberate indifference' standard that Farmer v. Brennan employs for prison officials who fail to protect inmates from violence by others."); Blyden v. Mancusi, 186 F.3d 252, 265 (2d Cir. 1999) ("Just as prison officials may be liable for their deliberate indifference to protecting inmates from violence at the hands of fellow inmates, . . . they may also be liable for their deliberate indifference to violence by subordinates.").

The Court concludes that under the applicable standard of deliberate indifference, Defendants have not shown that there are no questions of material fact. When the presented facts are viewed in the light most favorable to Plaintiff, as required by

the summary judgment standard, Defendants did not demonstrate a
lack of personal knowledge in the particular defendants nor did
they demonstrate that appropriate actions were taken to dispel
any possibility of deliberate indifference.  Although Defendants
show numerous instances in which Plaintiff acted exceptionally
inappropriately through throwing excrement, such a showing does
not diminish the standard Defendants much reach to establish
grounds for a summary judgment.  That standard was not reached
here.

Thus, the Court will deny Evans Defendants' Motion For
Summary Judgment as it relates to the failure to protect claims
in Counts A and D against Defendants Secord, Sagers, Rainey,
Harvey, Carroll, Cunningham, Burton, Belanger, and Drake.

### 2. Defendants' Assertion That Plaintiff Failed to State a Claim Upon Which Relief Can Be Granted Against Defendant Evans on the Conditions of Confinement Claim

This portion of the Motion for Summary Judgment relates to
Claim A and the incidents when Plaintiff alleges he was not
provided certain meals.  Defendants contend that Plaintiff has
failed to meet the standard required to establish a violation of
the Eighth Amendment because the claims asserted do not rise to
being reprehensible and inhumane.  (D.I. 150 at 3.)  Defendants
assert that Plaintiff was at all times provided with food and
that his decision to throw that food at correctional officers
does not create a right to have a second tray of food.  (Id.)  In

response, Plaintiff argues that he was not only denied food when he threw food at officers, but that he was also denied food for a period of time after such incidents and that such a withholding is improper. (D.I. 159 at 9.)

The Supreme Court has established that when evaluating an Eighth Amendment cruel and unusual punishment claim "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). An extreme deprivation is evaluated based upon the "evolving standards of decency that mark the process of a maturing society." Id. (internal citation omitted).

Courts that have addressed the denial of meals have not reached a standard of how many meals must be denied before a Constitutional violation has occurred, but have recognized that the deprivation of meals can be a violation. See Robles v. Coughlin, 725 F.2d 12, 16 (2d Cir. 1983)("a substantial deprivation of food may well be recognized as being of constitutional dimension"); Lindsey v. O'Connor, 327 Fed. Appx. 319, 321 (3d Cir. 2009)(unpublished)("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation."); Moss v. Ward, 450 F. Supp. 591, 596 (W.D.N.Y. 1978)(noting that deprivation of meals for four consecutive days is a violation). Based on this standard the denial of food could be found to be an extreme deprivation.

24

Although Defendants argue that Plaintiff only went without food when he used his food as a projectile, Plaintiff alleges that he was regularly forced to go without meals on the days after the day when he had thrown his food at guards. (D.I. 146 Ex. 7 D00068 at 29:16-24, 30:1-3.) Because of this dispute of fact, summary judgment is not appropriate.

Thus, the Court will deny Evans Defendants' Motion For Summary Judgment in relation to the claim of conditions of confinement against Defendant Evans in Count A.

**3. Defendants' Assertion That the Excessive Force Claim Against Defendant Harvey Must Be Dismissed**

This portion of the Motion relates to the excessive force claim against Defendant Harvey in Count D. Defendants argue that this claim should be dismissed because Plaintiff admitted that Defendant Harvey never used physical force against Plaintiff. In Plaintiff's deposition, Plaintiff stated that "[Harvey] did not physically punch me or use excessive force as far as physically." (D.I. 146 Ex. 7, D00070 at 38:21-24.) Plaintiff did not address this issue. The Court concludes that because Plaintiff admitted there was no physical force used by Defendant Harvey against Plaintiff in his deposition, the Motion in regard to Defendant Harvey for excessive force in Count D will be granted.

**4. Defendants' Assertion That Defendant Carroll is Entitled to a Judgment as a Matter of Law**

This portion of the Motion for Summary Judgment relates to

Count B's claim against Defendant Carroll for indifference to serious medical need and Count D's claim regarding failure to protect against him. Defendants argue that Defendant Carroll is entitled to a Judgment as a Matter of Law because the allegations asserted against him are insufficient to establish a § 1983 claim against him. (D.I. 150 at 5.) Defendants advance this argument by asserting that a § 1983 claim will necessarily fail because the claim is based on respondeat superior and none of the required personal involvement is present. (Id.) Plaintiff counters that through his role as Warden, Defendant Carroll was directly involved in the grievance and appeal process relating to inmate complaints and disciplinary actions and thus he had sufficient personal involvement to qualify as a § 1983 defendant. (D.I. 159 at 10.)

The Court concludes, after applying the previously discussed standard, that genuine issues of fact remain. Although the evidence cited to by Plaintiff represents examples of the hierarchy at the prison, specifically a recognition that there were many layers of reporting and that the warden is at the top of the hierarchy, the evidence does not clearly establish that this claim is based solely on a theory of respondeat superior. Because the claims against Defendant Carroll relate to how he reacted to information he received or was responsible to learn, it is possible to construe failing to act on that information as

personal involvement as opposed to the vicarious liability that would accompany a positive act by a subordinate. In sum, the Court cannot conclude that no material issue of fact remains because of this possible construction.

Thus, with regard to Counts A and D and their claims against Defendant Carroll, Evans Defendants' Motion For Summary Judgment will be denied.

### 5. Defendants' Assertion That Plaintiff's Excessive Force Claim Must Be Dismissed for Failure to Exhaust Administrative Remedies

This portion of the Motion For Summary Judgment relates to the excessive force claims in Count A asserted against Defendants Evans, Stanton, and Gardels. Defendants contend that Plaintiff failed to exhaust the administrative remedies available to him regarding these claims and thus the claims are barred under the Prison Reform Litigation Act. (D.I. 150 at 7-9.) Defendants further argue that because Plaintiff did not file a timely grievance, the administrative remedies were not exhausted. (Id.) Although Defendants opened their Reply Brief (D.I. 163) with a discussion of failure to exhaust administrative remedies that implied all claims in this case needed to be addressed under this standard, Defendants presented evidence relating only to failure to exhaust regarding excessive force claims from the July 27, 2003 and October 14, 2003 incidents. (Id. at 3.) Thus, the Court will address failure to exhaust only with regard to the

excessive force claims for the given incidents.  In response,
Plaintiff argues that he was denied the ability to file a timely
grievance because he was denied the proper materials while in
isolation and that once he was released from isolation he filed
the grievance within the requisite seven days.  (D.I. 159 at 11-
12.)  Plaintiff argues that his grievances were denied as
untimely and any further filings would have been futile.  (Id.)
He then argues that when a prison official thwarts the ability to
use the administrative process the exhaustion requirement is
satisfied.  (Id.)

       Defendants concede that there is a material question of fact
as to whether the alleged incidents of excessive force occurred,
thus the only issue to be considered is whether the claim is
barred for failing to exhaust the required administrative
remedies.

       Under the Prison Litigation Reform Act an inmate must
exhaust all administrative remedies before filing suit.  42
U.S.C. § 1997e (2009)("No action shall be brought with respect to
prison conditions under section 1979 of the Revised Statues of
the United States (42 U.S.C. 1983), or any other Federal law, by
a prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are
exhausted.").  Under that statute, "exhaustion means proper
exhaustion, that is, 'a prisoner must complete the administrative

review process in accordance with the applicable procedural rules, including deadlines, as a precondition to brining suit in federal court.'" Price v. Kozak, 569 F. Supp. 2d 398, 407 (D. Del. 2008)(quoting Woodford v. Ngo, 548 U.S. 81 (2006)). However, a prisoner is only required to exhaust the administrative remedies that "are available." Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). Specifically, "if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are 'available' to him." Davis v. Williams, 495 F. Supp. 2d 453, 457 (D. Del. 2007).

As stated above, the parties cite two particular events that led to the excessive force claims in Count A that are subject to an exhaustion analysis. The first event was the July 27, 2003, incident. Defendants argue that following this incident Plaintiff did not file a timely grievance because no grievance was filed in the seven-day period to make a grievance under prison policy. (D.I. 150 at 8.) Plaintiff contends that his failure to file a grievance during that time period was a result of being placed in isolation and not being permitted to file such a grievance. (D.I. 159 at 11.) Plaintiff adds that he filed a grievance within seven days of being released from isolation, but that it was denied as being untimely. (Id.)

Even when the accounts of the July 27, 2003, incident are

viewed in the light most favorable to Plaintiff, the Court concludes that summary judgment is appropriate. Plaintiff testified that following the incident the prison policy of not allowing inmates in isolation to have "writing supplies such as a pen, paper, and stationary, [prevented him from submitting] a grievance." (D.I. 160 B003 ¶ 12.) However, this testimony is largely discredited through the evidence presented by Defendants. Defendants have shown that Plaintiff had access to at a minimum pen and paper. While in isolation Plaintiff composed and filed several legal documents and noted that he had received legal mail. (See D.I. 164 Exs. 2-4.) In the Court's view there is no evidence showing that prison officials thwarted Plaintiff's ability to file a grievance. Without evidence supporting a reason for an exemption to the exhaustion requirement, there is no genuine issue of material fact that Plaintiff did not exhaust his administrative remedies regarding the July 27, 2003, incident because there was not a timely filed grievance. Thus, the Court will grant Evans Defendants' Motion For Summary Judgment as it relates to the excessive force claims against Defendants Evans, Stanton, and Gardels, in Count A regarding the July 27, 2003 incident.

The second incident in question is the October 14, 2003, incident. Plaintiff contends that multiple grievances and an appeal were filed for this incident and they were not responded

to by Defendants. (D.I. 159 at 12.) Defendants counter that the grievance process was not completely satisfied through the filing because additional steps were needed to satisfy exhaustion. (D.I. 163 at 3-4.) The evidence presented on this matter is in dispute. Therefore, there remains clear questions of material fact regarding what administrative steps were actually taken or neglected. Thus, the Court will deny Evans Defendants' Motion For Summary Judgment as it relates to the excessive force claims against Defendants Evans, Stanton, and Gardels, in Count A regarding the October 14, 2003 incident.

### 6. Summary of Evans Defendants Motion For Summary Judgment

1. Defendant's Assertion That Plaintiff's Failure to Protect Claims in Counts A and D Must Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted

- The Court will **deny** Evans Defendants' Motion For Summary Judgment as it relates to the failure to protect claims in Counts A and D against Defendants Secord, Sagers, Rainey, Harvey, Carroll, Cunningham, Burton, Belanger, and Drake.

2. Defendants' Assertion That Plaintiff Failed to State a Claim Upon Which Relief Can Be Granted Against Defendant Evans on the Conditions of Confinement Claim

- The Court will **deny** Evans Defendants' Motion For Summary Judgment in relation to the claim of conditions of confinement against Defendant Evans in Count A.

3. Defendants' Assertion That the Excessive Force Claim Against
Defendant Harvey Must Be Dismissed

    - The Evans Defendants' Motion For Summary Judgment in
regard to Defendant Harvey for excessive force in Count D
will be **granted.**

4. Defendants' Assertion That Defendant Carroll is Entitled to a
Judgment as a Matter of Law

    - In regard to Counts A and D and their claims against
Defendant Carroll Evans Defendants' Motion For Summary
Judgment will be **denied.**

5. Defendants' Assertion That Plaintiff's Excessive Force Claim
Must Be Dismissed for Failure to Exhaust Administrative Remedies

    - The Court will **grant** Evans Defendants' Motion For Summary
Judgment as it relates to the excessive force claims against
Defendants Evans, Stanton, and Gardels, in Count A regarding
the July 27, 2003 incident.

    - The Court will **deny** Evans Defendants' Motion For Summary
Judgment as it relates to the excessive force claims against
Defendants Evans, Stanton, and Gardels, in Count A regarding
the October 14, 2003 incident.

## IV. CONCLUSION

    For the reasons discussed, the Court will grant in part and
deny in part Defendants' Motions For Summary Judgment. (D.I. 144,

149.)

An appropriate order will be entered.